[Civ. No. 27781. Fourth Dist., Div. One. Sept. 14, 1983.]

MARVIN B. KAPELUS et al., Plaintiffs and Appellants, v.
NEWPORT EQUITY FUNDS, INC., et al., Defendants and Respondents.

**COUNSEL**

Marvin B. Kapelus & Associates, Lee W. Landrum and Daniel C. Warriner for Plaintiffs and Appellants.

Eric F. Fagan and Joel A. Schiffman for Defendants and Respondents.

**OPINION**

**COLOGNE, Acting P. J.**—Marvin B. and Audrey Kapelus appeal the order dissolving the preliminary injunction which had been granted in their action against Newport Equity Funds, Inc. (NEF), Newport Equity Fund Trust 295 (Trust 295), D. M. Sutherland and Real Estate Securities Service.

On October 2, 1980, the Kapeluses executed a note secured by a second deed of trust payable to Trust 295 in the amount of $225,000. The note provides for payment of interest only in monthly installments of $3,187.50, due on the fifth day of each month for 35 months beginning December 5, 1980. The note provided for late charges of $5 or 6 percent of the delinquent payment, whichever is greater, if the installment is not paid within 10 days of the due date.

Trust 295 is a limited partnership of which NEF was the general partner and servicing agent for various investors who used this method of operation to lend invested capital for second trust deed loans. The certificate of limited partnership reveals NEF contributed no capital to the venture and is entitled to none of the profits. On September 27, 1981, NEF submitted to involuntary bankruptcy. San Marino Services is the present general partner and City National Bank is the collection agent.

The events which followed are summarized as follows:

The first payment on the note due December 5, 1980, was tendered on December 11,[1] and after being dishonored by the bank twice, it was finally paid on December 30, 1980.

The second installment due January 5, 1981, was tendered January 16, 1981, and credited to the account.

The third installment due February 5, 1981, was tendered on February 17, 1981, and was twice dishonored by the bank due to insufficient funds. Kapelus was advised of the reasons for not accepting the tender and that a certified check would be required to replace the dishonored check.

The fourth installment due on March 5, 1981, together with the yet unpaid third installment, was received on March 13 or 17, 1981, when Kapelus tendered a check for $3,187.50 which was honored as payment of the third installment which was originally due February 5, 1981.

On March 27, Trust 295 recorded a notice of default and election to sell under the deed of trust and declared a breach for "failing to pay that installment of interest which became due February 5, 1981." This was an error because, although the March payment was delinquent, clearly the Kapeluses had been duly credited with the February payment. Later on May 7, Trust 295 recorded a rescision of this notice.

On April 5, 1981, the fifth installment under the note was due, and on April 15 or 21, 1981, Kapelus tendered a check for $3,187.50 which was returned with a letter explaining both the fourth and fifth installments were due and the trust would not accept less than the full amount due.

On May 5, 1981, the sixth installment was due, and on May 7, 1981, NEF sent the Kapeluses a letter explaining three installments were then due totalling $9,562.50 for the March, April and May payments, plus two late charges totalling $382.50 and a $10 NSF fee, for a grand total of $9,955 necessary to reinstate the loan. On May 18, 1981, NEF recorded a second, defective notice of default. On May 15 or 19, the Kapeluses tendered $6,375 for the fourth and fifth installments originally due March 5 and April 5. This tender was again returned with a letter of explanation the tender was insufficient to cure the default.

On June 15 or 22, 1981, the Kapeluses again tendered $3,187.50, and this too was returned as an insufficient tender.

---

[1]Dates of tender or payment are still in controversy in this case. Dates given in this opinion for payment or tender are gleaned from declarations and copies of exhibits attached to pleadings or declarations and are subject to proof, forming no part of the law of the case on this appeal. Use of alternative dates reflects points of controversy shown in the record.

On June 25, after the second notice of default was rescinded, a new notice of default was filed, this time properly alleging the failure to pay all payments due on and after March 5, 1981.

In response to Kapelus' request, accountings were prepared by NEF on April 21, May 7, June 22, and August 31, 1981, advising the Kapeluses the amount due to reinstate the loan. A similar letter was sent by NEF's attorney on October 28, 1981, updating the amount due.

On September 8, 1981, Kapelus filed a complaint seeking an injunction to prevent foreclosure. It contests the late charges and trustee's fees and costs. After a hearing on the order to show cause re preliminary injunction, the trial judge on October 26, 1981, granted an injunction on the condition Kapelus bring current the interest payments. The order read: "Preliminary Injunction granted on the condition that payments are current within 30 days and bond is posted by 10-30-81 and payments remain current. If bond is posted and payments are brought current, notice of default will be ordered expunged."

On November 17, Kapelus wrote the attorney for the defendants and made demand for $28,125, alleging that discovery had revealed NEF was the general partner for Trust 295 and the disclosure statement executed at the time of the loan stated "[t]he undersigned certifies that the lender for this loan will not be the broker or designated representative, either directly or indirectly, and the loan will be made in compliance with the California Real Estate Law." He asserts since no disclosure was made that NEF was a general partner in Trust 295, he is entitled to a return of commissions as authorized by Business and Professions Code section 10248.2, subdivision (b).[2]

---

[2]"(b) If a loan is negotiated in violation of any section of this article, the licensee, on demand, shall return to the borrower any bonus, brokerage or commission paid or payable under subdivision (b) of Section 10242 for negotiation of such loans. In the event such demand is not satisfied within 20 days from the date of written demand, the borrower may commence an action under this subdivision and may recover actual damages or twice any bonus, brokerage, or commission paid or payable under subdivision (b) of Section 10242 for the negotiation of said loan whichever is greater, plus costs and reasonable attorney's fees.

"The 'date of written demand' shall mean either the date upon which the written demand is personally delivered to the licensee or the date upon which the written demand is mailed to the licensee.

"A licensee may not be held liable in any action brought under this section for a violation of this article if the licensee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"If the borrower proceeds under this section he may not proceed under Section 10246 as to the same breach."

There was no allegation of this claim in the complaint and we are unable to find any direct allegation in the appropriate cause of action of the amended complaint filed later[3] that NEF is or was a real estate broker bringing NEF within the scope of this provision. At this point, we should note also the licensee may avoid liability by showing the violation was not intentional and resulted from a bona fide error. Kapelus is not, as a matter of law, entitled to recover under this section.[4] It is apparent these are factual matters to be resolved at trial and Kapelus has no right to an offset as a matter of law.

On December 3, Kapelus sent City National Bank a cashier's check for $3,750 which he represented to be the amount due for "interest to date" on the note after deducting the $28,125 commission paid pursuant to the claimed benefits under the Business and Professions Code.

On January 5, 1982, Kapelus wrote Victor George, the attorney for Trust 295, now demanding twice the commission as authorized under the section of the Business and Professions Code.

---

[3]The amended complaint was proffered January 26, 1982, but was not approved for filing until March 16, 1983, after the notice of appeal was filed in this case.

[4]Additionally, we are not told which section of the article the licensee has violated. We may assume it is sections 10240 and 10241, subdivision (j). They read as follows:

Section 10240 reads: "(a) Every real estate broker acting within the meaning of subdivision (d) of Section 10131 who negotiates a loan to be secured directly or collaterally by a lien on real property shall, before the borrower becomes obligated to complete the loan, cause to be delivered to the borrower a statement in writing, containing all the information required by Section 10241. It shall be personally signed by the borrower and by the real estate broker negotiating the loan or by a real estate licensee acting for the broker in negotiating the loan. When so executed, an exact copy thereof shall be delivered to the borrower at the time of its execution. The real estate broker negotiating the loan shall retain on file for a period of four years a true and correct copy of such statement as signed by the borrower.

"No real estate licensee shall permit such statement to be signed by a borrower if any information required by Section 10241 is omitted. This section is not applicable with respect to a loan for a lender enumerated in subdivision (a) of Section 10133.1 on which the broker receives a commission from the borrower not in excess of 2 percent of such loan.

"(b) For the purposes of applying the provisions of this article, a real estate broker is acting within the meaning of subdivision (d) of Section 10131 if he or she solicits borrowers, or causes borrowers to be solicited, through express or implied representations that the broker will act as an agent in arranging a loan, but in fact makes the loan to the borrower from funds belonging to the broker."

Section 10241, subdivision (j): "The statement required by Section 10240, the form of which shall be approved by the commissioner, shall set forth separately the following items:

". . . . . . . . . . . . . . . . . . . .

"(j) A statement that the real estate licensee is not the lender, either directly or indirectly."

If this be so, we query whether NEF is a "lender." The certificate of limited partnership indicates NEF contributed none of the capital and is entitled to none of the profits. A factual as well as legal question remains. We note the 1982 amendments to the section require a finding the broker has an "ownership interest" which does not appear from the record.

On January 7, 1982, George responded advising Kapelus that since NEF was in bankruptcy, he should address the claim for any such violation to the bankruptcy court and that in view of the failure to pay the interest due, Trust 295 would seek a dissolution of the preliminary injunction.

On February 9, George gave notice of a motion to dissolve the preliminary injunction and, after receiving affidavits and hearing argument on February 25, the court ordered the preliminary injunction dissolved unless Kapelus paid $37,687.50 by cashier's check on March 23, 1982, and thereafter pay $3,187.50 on or before the fifth day of each month commencing April 5. The matter of liability under Business and Professions Code section 10248.2, late charges and trustee's fees was held for resolution at trial. On March 10, 1982, Kapelus filed a notice of appeal of this order which we here address.

Since the filing of the appeal, Kapelus has filed an amended complaint adding causes of action for slander of title and statutory benefits under Business and Professions Code section 10248.2, subdivision (b).

We have before us, in addition to the issues on appeal, a motion to strike the respondents' brief for failure to observe the rules of court on the nature and color of the brief. Respondent has answered that motion and requests sanctions, not only because of the motion to strike but also for bringing a frivolous appeal. We provided Kapelus notice of hearing on the issue of sanctions, invited affidavits and set a hearing on the issue of sanctions to coincide with oral argument on the appeal.

Kapelus' first argument in a lengthy introduction states: "Where a Preliminary Injunction Has Been Conditioned Upon Payment of Sums Which Are 'Concededly Due' Rather Than Upon a Set Sum, Because the Amounts Due and Owing Are the Subject of a Dispute Between the Parties and Cannot Be Determined Absent a Full and Complete Accounting, It Is Reversible Error for the Court to Dissolve the Preliminary Injunction Until There Is a Determination of the Sum 'Concededly Due' by the Parties, Unless the Court Has Ordered a Full and Complete Accounting. If Both Parties Do Not 'Concede' to a Sum Due, and if No Court Ordered Accounting Has Been Rendered, the Amount Due and Owing Is a Matter of Fact to Be Determined at the Time of the Trial and the Status Quo Must Be Maintained Until Such Time."

A cursory reading of the arguments at the October 26, 1981, hearing as well as the February 25, 1982, hearing make it abundantly clear the reference to what is "concededly due" is the interest payment of $3,187.50 due each month. The discussions at the first hearing led to the indisputable

conclusion that the amount due under the preliminary injunction condition would be the interest installments, the "payments," from March 5 through December 5, 1981, 10 months. Ten months of payments at $3,187.50 each totals $31,875. That Kapelus knew this was the total due by December 5, 1981, is disclosed by his December 3 check of $3,750 which, when added to the claimed offset of $28,125, comes to the same total, $31,875. If there was any confusion,[5] it was cleared up by the February 25 hearing and the order dissolving the preliminary injunction which followed. The discussion at that hearing set out specifically the amount due would be the $3,187.50 installments from March 5, 1981, through March 5, 1982, 13 months. The basis for Kapelus' dispute at the October 26 hearing rested with what he asserts are the late charges, trustee's fees and costs. At the February 25 hearing, he additionally asserted violation of the Business and Professions Code which will be discussed in greater detail later. While Kapelus no doubt would like to avoid any payment until final resolution of all his claims, he could not originally assert anything more than a minimal sum of allegedly improper charges. At the February 25 hearing on the motion to dissolve the preliminary injunction, Kapelus made his usual obfuscating argument this time clouding the real issues further with his claim for the Business and Professions Code violations.

It is clear the amount required to secure the benefits of the order dissolving the preliminary injunction was determined by adding the 13 installments of interest at $3,187.50 ($41,437.50) less the cashier's check held by the collection agent for the defendants in the amount of $3,750 to provide a total of $37,687.50 due as of March 23, 1982. No detailed statement of accounting is required to provide those figures. The full accounting, however, would be desirable after the resolution at trial of the contested items.

Kapelus offers a phantasmagoric chain of confusion for the trial judge's resolution at the hearing on the preliminary injunction, which he repeats for the judge hearing the order of dissolution and this court. The equities remain unobscured in spite of the cloud he has attempted to provide us. To deny the lienholders their right to foreclose on their security, Kapelus should at least pay interest on his debt pending resolution of his claims. The trial court has been extremely generous in twice permitting Kapelus to bring current the interest payments which the judge, opposing counsel and this court, if not Kapelus, concede are due. The alleged improper late charges, trustee's fees and damages stemming from the alleged Business and Professions Code violation remain questions of fact and will await a full trial. Kapelus' claim is fully secured by the principal debt or a substantial portion of which he will owe, even if he prevails on all his claims. Interest on the

---

[5]We note no appeal was taken from this order granting the preliminary injunction.

underlying debt is a fair amount to be paid if the security holder must forego his right to foreclose.

Kapelus' next argument in a somewhat shorter introductory statement asserts: "It Was Reversible Error for the Court to Order Payment of Amounts Which Were the Subject of a Dispute Between the Parties, as a Condition to Maintaining the Status Quo of a Preliminary Injunction, Where Tender of the Same Had Previously Been Timely Made, but Subsequently Refused Without Explanation."

At the outset, we should point out it is very apparent the reasons for refusal of the tender were obvious and the exhibits filed by Kapelus himself in connection with his motion to amend the complaint make it apparent NEF wrote Kapelus giving him a full explanation in each case for the refusal to accept his tendered offer. The letters of April 21, 1981, June 22, 1981, and January 7, 1982, state why the tendered remittance was not being accepted.

The claim of a right to a setoff for commissions Kapelus raised late in these proceedings is yet to be resolved and his attempt to avoid payment of properly due interest by this unestablished claim is spurious. Neither the preliminary injunction nor the order conditionally dissolving the preliminary injunction allowed him credit for that claim. He had, and has, no right to use that claim to diminish the amount called for in the orders absent a modification of those orders. The propriety of that claim must await resolution at trial.

It is beyond belief that Kapelus seriously believes he can effectively modify a court order by simply raising a new unproven claim not even fully supported by a comprehensible verified statement.

Kapelus' third contention is stated as follows: "The Court Erred in Not Finding, as a Matter of Law, That Newport Equity Was the Agent of Respondent, Newport Trust, and That by Reason of Such Relationship, California Business and Professions Code, Sections 10240, 10241 and 10248.2(b) Are Applicable to the Respondent's Conduct as Well, Thereby Entitling Appellants to a Setoff Against Respondent's Claim, in the Sum of $56,250.090, as a Matter of Law."

While Kapelus asserts in his opening brief NEF was a licensed real estate broker, the unverified amended complaint makes no such allegation in con-

nection with the claimed violation of Business and Professions Code section 10240. Even if it were proper for us to consider the amended complaint filed after the injunction dissolution order in question, and if the amended complaint contained the proper allegations, we cannot take judicial notice NEF held a valid real estate broker's license nor that it had an interest in the commissions. As noted above, these are factual matters to be resolved at trial. Kapelus' argument and authorities in this regard should be asserted at the time of trial.

The motion to strike the respondent's brief is denied since the brief substantially complies with the rules of court and did not interfere with the reasonable reading or understanding the response to the issues Kapelus raised. We should point out in passing, however, if we were inclined to strike respondent's brief, we would be compelled to strike Kapelus' request to augment the record, for it, too, was stapled without coverings for the fasteners. In addition, we note the motion to strike the respondent's brief violates rule 15(d), California Rules of Court, because, among other reasons, the margins are not at least one inch in width at the bottom (see also Cal. Rules of Court, rules 9(b) and 44). Whose house is of glass, must not throw stones at another. (George Herbert (1592-1635) Jacula Prudentum No. 196.)

Kapelus' contentions in this appeal are totally without merit. It is apparent to us from his tactics at the outset of this matter that his actions have been designed to delay foreclosure and the appeal here was taken for the sole purpose of delay to retain the premises. The court therefore finds it appropriate to impose sanctions against Kapelus (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a)). Sanctions were requested by the respondents in this action and the court advised the parties a hearing on that request would be held at 9 a.m. on August 11, 1983, to coincide with oral argument on the appeal. After a hearing on the merits of the request for sanctions, this court finds $5,000 is an appropriate penalty against Marvin B. Kapelus and Marvin B. Kapelus and Associates. As the attorneys of record, they are ordered to pay to Newport Equity Fund Trust 295 the sum of $5,000 as a penalty to be added to costs in this matter. This sum is assessed against Marvin B. Kapelus and Marvin B. Kapelus and Associates as the attorneys as a penalty to discourage like conduct in the future (see *In re Marriage of Millet* (1974) 41 Cal.App.3d 729, 732 [116 Cal.Rptr. 390]; *Babb* v. *Weemer* (1964) 225 Cal.App.2d 546, 553 [37 Cal.Rptr. 533]).[6]

---

[6]This penalty is not to be deemed attorney fees which might otherwise be awarded in the proceeding.

Order affirmed.

Staniforth, J., and Lewis, J.,* concurred.

A petition for a rehearing was denied September 29, 1983.

*Assigned by the Chairperson of the Judicial Council.