[Civ. No. 69423. Second Dist., Div. Three. Aug. 1, 1984.]

MAPLE PROPERTIES, Plaintiff and Appellant, v.
BETTY H. HARRIS et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*The opinion filed contains portions which need not be published. Pursuant to rule 976.1 of the California Rules of Court, it is ordered that part III of the Discussion be deleted from the published version of the opinion.

## COUNSEL

Levy & Norminton, Thomas M. Norminton, Leo D. Plotkin, Loeb & Loeb, Howard I. Friedman and Robin Meadow and Ervin, Cohen & Jessup and Richard Amerian for Plaintiff and Appellant and for Appellant's counsel Levy & Norminton.

Selvin & Weiner, Paul P. Selvin, James S. Tyre, Yusim, Stein & Hanger, Robert T. Hanger, Roger Bentley, Scott C. Haith and William M. Samoska for Defendants and Respondents.

## OPINION

**LUI, Acting P. J.—**

### SUMMARY

In this appeal, we are asked to analyze the sufficiency of the allegations of a complaint filed by appellant, a real estate developer, against the re-

spondents, private citizens who supported a referendum that repealed a city ordinance which would have allowed appellant to build a condominium project. For the reasons stated below, we conclude that the conduct of the citizens during the course of this political campaign was not actionable.

We also determine that the appeal is partially frivolous as to the libel claims because the invalidity of these claims was conclusively adjudicated by our Supreme Court. Accordingly, we assess sanctions against appellant's counsel Levy & Norminton.

### FACTS AND PROCEDURAL HISTORY

As a portion of the complaint has already been thoroughly reviewed by our Supreme Court in *Okun* v. *Superior Court* (1981) 29 Cal.3d 442 [175 Cal.Rptr. 157, 629 P.2d 1369] (cert. den. 454 U.S. 1099 [70 L.Ed.2d 641, 102 S.Ct. 673]), we adopt the Supreme Court's recital of the facts of this case as our own.

Appellant, Maple Properties, "is a limited partnership that purchases, manages, develops, and sells real property. In 1977 it bought 10 acres of Beverly Hills property with a view to building condominiums. The property, then under a building moratorium pending determination of zoning, adjoined city-owned parcels. [Appellant] had discussed with city officials the possibility of a land exchange so that [appellant] and the city each would own contiguous land. The discussions concluded successfully on November 28, 1978, when the city council agreed to the land exchange and adopted a zoning ordinance allowing plaintiff to construct condominiums on all its newly acquired property. [¶] To prevent construction, [respondents Erwin Okun, Betty H. Harris, Joann Ruden and various Does] circulated and then filed a petition to allow the electorate to reject or accept the ordinance. Consequently, the council placed it on the ballot for an election held March 9, 1979. It was rejected and thus repealed. . . ." (*Okun, supra,* 29 Cal.3d at pp. 447-448.)

Two months after the referendum election, appellant filed its initial complaint against respondents. The subsequently filed first amended complaint alleged ten causes of action, namely for libel (the first, second, third and fifth causes of action), slander (fourth and sixth causes of action), violation of various federal civil rights laws (seventh and eighth causes of action) and interference with prospective economic advantage (ninth and tenth causes of action).

On April 24, 1980, respondents' demurrer to the first and seventh through tenth causes of action was sustained without leave to amend. Respondents'

demurrer to the defamation causes of action (second, third, fifth and sixth), however, was overruled. The fourth cause of action was placed off calendar because it alleged only Doe defendants.

The Supreme Court granted a hearing on respondents' petition for writ of mandate on the defamation causes of action and eventually issued a peremptory writ of mandate directing the superior court to sustain the demurrer. (*Okun, supra,* 29 Cal.3d at p. 460.) The peremptory writ issued by the Supreme Court ordered the demurrer to the libel causes of action sustained without leave to amend but permitted amendment of the sixth cause of action for slander. (*Id.,* at p. 460.)[1]

On remand, the trial court, pursuant to the order of the Supreme Court, sustained the demurrer to the libel causes of action without leave to amend.

Appellant filed a second amended complaint, alleging only a fourth cause of action for slander and a sixth cause of action for conspiracy to commit slander. The trial court sustained respondents' demurrer to the second amended complaint and denied further leave to amend. Subsequently, the trial court dismissed the entire action.

Appellant filed a timely notice of appeal which is the subject of this opinion.

CONTENTION

Appellant contends that the complaint states ten viable causes of action and that the trial court erred in sustaining the various demurrers without leave to amend.

DISCUSSION

I

*Our Supreme Court's Decision in Okun v. Superior Court (1981) 29 Cal.3d 442, Mandates Dismissal of the Causes of Action Based on Libel*

Appellant first contends that the superior court erred in dismissing the libel causes of action. The allegedly libelous documents consisted of a letter

---

[1] Appellant erroneously asserts that the Supreme Court expressly permitted amendment of both the fourth and sixth causes of action. The Supreme Court's decision only permitted amendment of the sixth cause of action. (*Okun, supra,* 29 Cal.3d at p. 460.)

to the editor of the Los Angeles Times,[2] an open letter to the mayor published in the Beverly Hills Courier[3] and the statement included in the "Sample Ballot and Voter Information Pamphlet."[4]

---

[2] The letter reads as follows:
"Setting the Record Straight

"The article regarding a controversial land swap between the Beverly Hills City Council and a developer of luxury condominiums ('Land Swap Stirs Up Beverly Hills' by Sam Kaplan, Dec. 26) missed the point entirely.

"To set the record straight:

"While the area in contention adjacent to Beverly Hills' civic center—is known as the industrial area, it also houses the city's vital municipal services facilities. It is the site of the city's refuse transfer station, vehicle maintenance garages and all the other indispensable operations that make a city function. It is also the site of a water treatment plant that the city council abandoned in 1976.

"This action was followed by the council's abandoning the city's own water wells in the midst of the recent drought. It was this incredible move that caused a number of citizens to become suspicious of the council's motives. Beverly Hills residents were thus forced to become completely dependent upon one very expensive source of water, that supplied by the Metropolitan Water District of Southern California. Even the MWD's general manager advised the city against this decision.

"Nevertheless, this was done despite the fact that in 1974 the voters of Beverly Hills had passed, by a two-thirds majority, a $3.75 million bond issue to refurbish the city's water wells and treatment facilities. The only council member opposed to the bond issue and retention of the city's wells was Richard Stone, an attorney.

"Mysteriously, one week after the voters approved the refurbishing of their water system, the city announced that its cost projections to revitalize the wells were $5 million short. Amazingly, a year later the claim went to $12 million more than the voter-approved bonds. But, without asking the voters again, in December, 1976, the council closed down the wells and sold off the land on which they were located.

"Not until April 12, 1977, did Richard Stone, at that time the mayor of Beverly Hills, reveal that David Rowen, representing a developer, had become a client of Stone's. The abandoned treatment plant is now earmarked for the developers in a landswap deal."

[3] The letter provided in pertinent part as follows: "Are we going to become a contract city, beholden to outside vendors? [¶] Where will our water come from when we are totally at the mercy of the MWD and rates treble and we are in a drought worse than the recent one? [¶] Why are we trading land which we should be buying—like other cities that are landbanking for the future? [¶] But the even larger question is who will gain from this plan? The majority of residents, or the very few individuals with a vested interest in the condominium project? [¶] And what about all the ambiguous promises to the senior citizens? The 100-unit housing promise is a blatant, political carrot in return for their dedicated support. [¶] Can you honestly tell the folks there really will be such a building for them exclusively? What will the costs be? $300 a month? $650? Who will determine those with highest priority? How can you restrict entry to city residents only, if state and federal money is involved? And what about the hundreds and hundreds of needy, Beverly Hills seniors who will be left out?"

[4] The statement provided as follows:
"ARGUMENT AGAINST PROPOSITION B

"Beverly Hills has only one Industrial Area to sustain us as an independent city. *We must keep it for our community needs and not allow it to be zoned away.*
"*Vote No on Proposition B.*

"We need a place for police cars, carpentry and paint shops, city truck maintenance, park equipment, trash disposal, water facilities and other lifeline services essential to our community.

"These indispensable city services enable Beverly Hills to operate efficiently and at low cost. They must be contained in the Industrial Area for they are unpleasant neighbors. *We*

In *Okun, supra,* 29 Cal.3d 442, the Supreme Court exhaustively analyzed these documents and concluded that they "could not reasonably have been interpreted by its probable readers as having a libelous meaning." (*Id.,* at p. 457.) The court further concluded that leave to amend the complaint should be denied "because *'there are no circumstances under which an amendment would serve any useful purpose'* [citation] . . . ." (*Id.,* at p. 460.) (Italics added.)

Incredibly, appellant now asks this court to overturn the superior court order which complies with the clear and unambiguous directive of the Supreme Court to dismiss the libel causes of action.

Initially, appellant contended in its opening brief that our further review of the libel causes of action was warranted on grounds that subsequent to the Supreme Court's decision in *Okun,* "new facts" "which were not part of the record in the first appeal" were discovered. Appellant urged that these "new facts" that respondent and others had agreed to make criminal complaints against Richard Stone and appellant with government agencies at the time the allegedly libelous letters were published, "add[ed] new contextual meaning" to the publications which our Supreme Court had deemed to be nonlibelous.

However, the record reveals that these additional facts were not "new" at all. Appellant now concedes that these facts were part of the record when the Supreme Court considered respondents' petition for writ of mandate and again when it considered appellant's petition for rehearing.[5]

---

*cannot afford to allow developers to take over the only suitable location within our city for these vital needs.*

"Every citizen approved General Plan designated this land to be saved for municipal and service use. The developers hired one of our Councilmen, subsequently the Fair Political Practices Commission ruled the Councilman had a conflict of interest. The General Plan was changed drastically to accommodate the developer's desires, ignoring residents' needs.

"The Council·violated the recommendation of their own consultant and the Council-appointed citizens committees when it voted this rezoning.

"THIS SCHEME WILL COST THE TAXPAYERS MILLIONS. Rubbish disposal has to be moved, street intersections redesigned, businesses relocated, city services put underground, all at prohibitive costs to taxpayers.

"ONLY THE DEVELOPERS BENEFIT FROM THIS REZONING. They will sell condominiums at up to $1,000,000.00 each, which the taxpayers will subsidize. They will get city maintained landscaping. By the Council's own admission, these luxury condominiums will cost the city more to service than revenues they will produce.

"Senior Housing is being used as a deceptive cover for this "Enrich the Developers" scheme.

"*Don't jeopardize our city's future!* VOTE NO ON PROPOSITION B.

"JOANN RUDEN, President League of Women Voters of Beverly Hills

BETTY H. HARRIS, Chairperson Committee to Save Beverly Hills"

[5]Appellant made this concession in its reply brief to respondents' brief filed in connection with our order to show cause re sanctions and during the hearing conducted pursuant to our order to show cause.

■ It is axiomatic that the Court of Appeal is bound by the decision of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The Supreme Court's determination of the question of the propriety of the libel causes of action is law of the case. (*Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748 [134 Cal.Rptr. 52].) We can review it no further and the libel causes of action were properly dismissed.

II

*This Appeal Is Partially Frivolous and Is an Appropriate Instance for the Imposition of Sanctions*

A. *The Procedural History and Our Order to Show Cause*

We now address the question as to whether sanctions should be imposed under Code of Civil Procedure section 907[6] and rule 26(a) of the California Rules of Court.[7]

In its brief on appeal, respondent Okun requested that this court award sanctions for attorney's fees and costs on the grounds that the contentions on appeal were frivolous. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) Appellant argued against the imposition of sanctions in its reply brief.

Appellant filed a written election to waive oral argument at the hearing on the appeal set for May 16, 1984. Respondents' counsel appeared at the oral argument, argued briefly and responded to our questions; both counsel then requested sanctions against appellant for pursuing a frivolous appeal. We indicated to respondents' counsel that we would consider remanding the matter for hearing in the superior court on the question of sanctions for an appeal that was frivolous with regard to the libel claims.

Upon reflection, it was our view that the issue of sanctions for an appeal which was partially frivolous was a question of law and therefore an issue we should decide. Because of our desire to follow scrupulously the dictates

---

[6]Section 907 of the Code of Civil Procedure provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

[7]Rule 26(a) of the California Rules of Court provides in pertinent part that, "[w]here the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

of our Supreme Court's decision in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] *(Flaherty), and* because of appellant's decision not to appear for oral argument, we issued an order to show cause why sanctions should not be assessed against appellant and its counsel.[8]

Appellant and its counsel filed a 32-page brief in response to our order to show cause.[9] This brief asserted three major contentions: (1) the proceeding instituted by our order to show cause violates their procedural due process rights because they were not afforded reasonable notice and an opportunity to be heard; (2) the appeal is not frivolous; and (3) even if the appeal on the libel claims is frivolous, the remaining six causes of action are meritorious and the appeal cannot be considered frivolous.

### B. *The Flaherty Due Process Requirements Have Been Satisfied*

(2) In *Flaherty,* our Supreme Court discussed the necessary due process requirements to be afforded a party prior to the imposition of sanctions. The court stated, "[d]ue process requires that certain basic procedural protections be afforded before the state deprives an individual of property. [Citations.] . . . [¶] . . . Fundamental constitutional mandates require that the basic protections of due process be followed before an attorney is fined for prosecuting a frivolous appeal." *(Flaherty, supra,* 31 Cal.3d at pp. 651-652.)

"Due process, fundamental fairness and the integrity of our judicial system all require that counsel be permitted to pursue their clients' interests

---

[8]The Order to Show Cause issued May 23, 1984, states in full as follows:
"THE COURT:
"To MAPLE PROPERTIES AND ITS ATTORNEYS, LEVY & NORMINTON:
"Good cause appearing therefor, you are hereby ordered to appear before this court in its courtroom at 3580 Wilshire Boulevard, on June 20, 1984, at 9:00 a.m., to show why sanctions should not be assessed against you in the above appeal. (Code Civ. Proc., § 907, Cal. Rules of Court, rules 26, subd. (a), and 135 [sic]; *In re Marriage of Flaherty* (1971) 31 Cal.3d 637, 649; see also *People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906; *Miller* v. *R.K.A. Management* (1979) 99 Cal.App.3d 460, 469-470.)
"Appellant may file a brief in opposition to this order to show cause on or before June 4, 1984. On or before June 11, 1984, respondents may file a brief documenting those damages which they incurred on appeal by virtue of appellant's request that this court review the libel causes of action in the complaint below following the Supreme Court's decision in a prior but related appeal. *(Okun* v. *Superior Court* (1981) 29 Cal.3d 442.)"
The citation to rule 135 in the Order to Show Cause which refers to sanctions for frivolous appeals in the superior court, was clearly irrelevant and when read in connection with rule 26(a) which preceded it, is obviously surplusage.
Subsequent to the issuance of our Order to Show Cause, we denied appellant's demand for a jury trial on the issue of sanctions and also denied appellant's motion for an extension of time to respond to our Order to Show Cause.

[9]With respect to sanctions, references to appellant shall also refer to its counsel Levy & Norminton.

with the confidence that they will not be singled out at random for sanctions. In proper cases, the imposition of penalties for prosecuting a frivolous appeal may be fair and may serve the useful purpose of deterring similar conduct. However, such sanctions should be imposed rarely and only if the mandates of procedural due process are obeyed. [¶] Due process is a flexible concept, and must be tailored to the requirements of each particular situation. . . . The appellate courts should exercise their statutory power to impose sanctions only after scrupulously observing the due process mandates set forth herein. Penalties for prosecuting frivolous appeals should not be imposed without giving fair warning, affording the attorney an opportunity to respond to the charge, and holding a hearing. Further, when imposing sanctions, the court should provide the attorney with a written statement of the reasons for the penalty." (*Id.*, at p. 654.)

Appellant's claims concerning the violation of its due process rights are specious. Appellant chose not to appear at oral argument to challenge the respondents' contentions and the request for sanctions. The request for sanctions had been made in respondent Okun's brief filed nearly six months prior to the scheduled date for oral argument. In order to comply with *Flaherty,* we issued an order to show cause re sanctions.

While appellant claims our order to show cause lacked clarity and precision, its responses to our order and its arguments presented at the hearing belie this contention. An extensive brief and a supporting declaration as well as a reply to respondents' brief was filed. Appellant and its counsel appeared at the hearing with two additional counsel who were engaged to present appellant's views. Appellant's counsel engaged in a vigorous and extensive debate with respondents' counsel before this court. The briefs submitted by appellant exhaustively cited the relevant statutory and decisional authorities on the subject of frivolous appeal; the briefs squarely addressed the subject matter of our order to show cause. At the conclusion of the hearing, we offered appellant's counsel further opportunity to brief the subject of sanctions and they declined our invitation.[10]

We have complied with the due process requirements set forth in *Flaherty*. Our order to show cause adequately warned of the possibility of sanctions; we permitted the filing of briefs; and, we conducted a lengthy hearing during which appellant was permitted a full opportunity to present argument on the issue.

---

[10]The following statement was made by appellant's counsel in regard to our invitation for further briefing: "Your Honors, I believe we have submitted the basic arguments either orally just today or in our briefs and I don't think we really need additional briefing at this time. What we were complaining about was the very short fuse that we had to suffer under, but I believe we have managed to provide the basic arguments to your Honors, notwithstanding that short fuse."

## C. *The Appeal Concerning the Libel Claims Is Frivolous*

 Next, we must determine whether the appeal of the libel claims is frivolous. The standards for determining when an appeal is frivolous was extensively set forth in *Flaherty, supra,* 31 Cal.3d 637. Because the language contained in that opinion is crucial to our determination, we quote from it at length.

"*The California cases discussing frivolous appeals provide a starting point for the development of a definition of frivolous. Those cases apply standards that fall into two general categories: subjective and objective.* [Citation.] *The subjective standard looks to the motives of the appellant and his or her counsel.* Thus, in *Simon* v. *Bemis Bros. Bag Co.* (1955) 131 Cal.App.2d 378, 382 [280 P.2d 528], the court rejected a claim that an appeal was frivolous, noting that counsel presented his argument in a 'courteous and gracious manner' and seemed to believe 'fervently' that he might succeed on the merits. Similarly, the courts have frequently looked at the 'good faith' of the appellant and have penalized appellants where the only purpose of the appeal was delay. [Citations.]

"*The objective standard looks at the merits of the appeal from a reasonable person's perspective.* 'The problem involved in determining whether the appeal is or is not frivolous is not whether [the attorney] acted in the honest belief he had grounds for appeal, but whether any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous.' [Citations.] [¶] The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. [Citations.] [¶] Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—*or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.* [Citation.]" (*Id.,* at pp. 649-650.) (Italics added.)

 Here, the appeal of the libel claims is frivolous under the "objective" standard espoused in *Flaherty, supra,* 31 Cal.3d at page 649. No reasonable person would conclude that the libel claims had any merit after the decision in *Okun* was rendered. In *Okun,* the sufficiency of the libel

claims was based on the two letters and the ballot argument. The court stated that "[e]ach of those documents is nonlibelous when read in light of [the] circumstances." The court further stated that "leave to amend those three [libel] causes should be denied because 'there are no circumstances under which an amendment would serve any useful purpose' [citation] and 'speedy resolution of cases involving free speech is desirable' to avoid 'a chilling effect upon the exercise of First Amendment rights' [citation]." (*Okun, supra,* 29 Cal.3d at p. 460.)

Facts concerning the criminal investigation were placed in the superior court record sometime in 1980 by appellant itself prior to the hearing on the first demurrer and were part of the record before the Supreme Court in the writ proceedings in *Okun.* Just because the Supreme Court did not mention this "criminal investigation" in *Okun* does not mean that the court failed to consider these facts and then reject them. It is a rare opinion indeed which covers all the points urged by the parties in their briefs or oral argument. Furthermore, after appellant's petition for rehearing in *Okun* on the basis of these "new facts" was denied, no reasonable person would dispute the fact that the libel claims were totally and completely without merit.[11]

We need not address the question of whether the appeal was partially frivolous on a "subjective" basis, because under *Flaherty,* if the appeal was objectively frivolous, sanctions could be imposed even if the record fails to demonstrate that the appeal was "subjectively" frivolous. (*Flaherty, supra,* 31 Cal.3d at p. 650.)

D. *Sanctions May Be Awarded When an Appeal Is Partially Frivolous*

Appellant asserts that even if the libel claims were frivolous, the appeal was not frivolous, because of the existence of other viable causes of action.[12] We disagree.

---

[11]In support of its position that the appeal was not frivolous as to the libel claims, appellant presented the declaration of an attorney, who opined that the "inclusion of arguments relating to the libel causes of action in appellant's Opening Brief was not frivolous and that a reasonable attorney could have thought inclusion . . . was meritorious." However, the opinion is premised on the "newly founded context" of the "concurrent criminal investigation initiated by Respondents." Because the opinion is so premised, it must be viewed in this context and discounted.

[12]Appellant's argument could be carried to an illogical extreme. If an appeal consists of 100 causes of action and 99 of said actions were frivolous, then the appeal could not be *totally* frivolous because one cause of action had merit. Therefore, we must look to the entire character of the appeal to determine whether the frivolous aspects are significant and material such as to warrant sanctions because the appeal was partially frivolous.

None of the decisions cited by the parties or uncovered by our research has squarely addressed the question of the propriety of sanctions when one or more severable and distinct issues in an appeal is frivolous, but the balance of the appeal has arguable merit. For example, in *Custom Craft Carpets, Inc.* v. *Miller* (1982) 137 Cal.App.3d 120 [187 Cal.Rptr. 78], and *People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906 [185 Cal.Rptr. 36], the entire action was determined to be frivolous and sanctions were imposed.

Appellant's reliance on *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 702-703 [128 Cal.Rptr. 357], is misplaced. That case is distinguishable because the Supreme Court's decision did not preclude further amendment of the pleading despite the sustaining of the demurrer to the complaint without leave to amend. The *Okun* decision, however, leaves *no* doubt that no further amendments would be allowed.

The reference to *Anders* v. *California* (1967) 386 U.S. 738, 744 [18 L.Ed.2d 493, 498, 87 S.Ct. 1396, 1400], in *Flaherty, supra,* 31 Cal.3d at page 649, is of no assistance to appellant. While it is true that *Flaherty* cited *Anders* for the proposition that "an appeal is not frivolous if 'any of the legal points [are] arguable on their merits'" (*ibid.*), the reference to *Anders* was used in the context of "'whether any reasonable person would agree that the *point* is totally and completely devoid of merit, and, therefore, frivolous.' [Citations.]" (Ibid.) The use of the word "point" rather than the word "appeal" to describe whether the appeal is frivolous would support the proposition that an appeal may be partially frivolous if a point on appeal has no merit and therefore the proper subject of sanctions.

While the entire appeal is not totally frivolous because it challenges the merits of the trial court's dismissal of the slander and other causes, the appeal is partially frivolous insofar as it attempts to relitigate the libel claims which were conclusively decided in *Okun*.

█ Sanctions for an appeal which is partially frivolous are appropriate if the frivolous claims are a *significant* and *material* part of the appeal. Here the libel claims are not only significant and material but such claims are severable and distinct from the other causes of action.

In imposing sanctions, we are well aware of the strong public policy in favor of the peaceful resolution of disputes in our courts and that attorneys must not be deterred from pursuing their client's remedies for fear of sanctions against them and/or their clients. Nevertheless, "the practice of penalizing frivolous appeals reflects a fear that irresponsible litigants may abuse

their right of access to the judicial system." (*Flaherty, supra,* 31 Cal.3d at p. 648.)

E. *The Amount of Sanctions*

Counsel for respondents Harris and Ruden estimated that 50 percent of his time on this appeal or $9,500 is allocable to the libel causes of action. Counsel for respondent Okun also estimates that 50 percent of the 145 hours he devoted in defending this appeal on behalf of his clients were allocable to the libel claims. These estimates were submitted prior to the hearing on our order to show cause.

In determining the amount of sanctions, we have considered the following factors: the nature and extent of the libel claims on appeal and the conclusive holding in *Okun* (see *Beckstead* v. *International Industries, Inc.* (1982) 127 Cal.App.3d 927, 934 [179 Cal.Rptr. 767]); the protracted length of this litigation and the delay in the resolution of the appeal (see *Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1012 [194 Cal.Rptr. 628] and *Miller* v. *R. K. A. Management Corp.* (1979) 99 Cal.App.3d 460, 469 [160 Cal.Rptr. 164]; the chilling effect that appellant's actions have had on the respondents' first amendment rights and the electoral process, the relative costs of legal counsel for respondents in addressing the frivolous claims on appeal (see *Wax* v. *Infante* (1983) 145 Cal.App.3d 1029, 1031 [194 Cal.Rptr. 14]); the undue burden on the legal system and consumption of this court's time (see *Custom Craft Carpets, Inc.* v. *Miller, supra,* 137 Cal.App.3d 120, 125); and the need to deter this type of conduct in the future (see *Kapelus* v. *Newport Equity Funds, Inc.* (1983) 147 Cal.App.3d 1, 9 [194 Cal.Rptr. 893]). After weighing all of these factors, we have determined that an appropriate sanction in the form of a penalty of $20,000 is suitable and appropriate in view of appellant's use of this court to relitigate a settled question.

The opening brief of appellant and Levy & Norminton filed in response to our order to show cause states that "*If, Against All The Evidence, Appellant's Contentions Are Found To Be Frivolous, The Responsibility Is Solely That Of Appellant's Counsel.* [¶] The Order to Show Cause suggests that the Court is considering the imposition of sanctions against both Appellant and its counsel. Although we believe that sanctions cannot be justified in any case, the accompanying declarations make it clear that any sanctionable conduct was solely counsel's. *Norminton Decl.,* ¶ 15; *Mahboubi Decl.,* ¶¶ 3-7. Appellant relied on its counsel's advice, and it should not be punished for having done so." (Italics in original.) We interpret this statement in said brief to suggest that Levy & Norminton should be sanctioned and not appellant. We shall therefore impose sanctions on counsel. This

opinion is a written statement of our reasons for imposing sanctions as required by *Flaherty*.

### III*

. . . . . . . . . . . . . . . . . . . . . . .

### IV

*The Court Did Not Abuse Its Discretion in Sustaining the Demurrers Without Leave To Amend*

Appellant finally urges that the trial court erred in sustaining the demurrers to all of the causes of action without leave to amend. We disagree.

The superior court was, of course, precluded from allowing an amendment to the causes of action based on libel by the authority of *Okun, supra,* 29 Cal.3d at p. 460.

■ As to the remaining causes of action, denial of leave to amend was appropriate. Although great liberality should be exercised in permitting a plaintiff to amend (*LeMoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]), an amendment should not be allowed where it would not serve any useful purpose. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215].)

As to the causes of action based on civil rights statutes and interference with economic advantage, there are no circumstances under which an amendment to the complaint could state a cause of action under the theories proffered in the absence of state action.

The question of whether appellant should have been allowed to amend the slander cause of action raises a closer question. Over the vigorous objection of three justices, the majority in *Okun, supra,* gave appellant the opportunity to amend its cause of action in slander after determining that the allegation that Councilman Stone entered into a "corrupt" relationship with appellant was not slanderous in context of a political debate. The court noted the "possibility" of an appropriate amendment.

The trial court determined, and we agree, that appellant's new attempt to amend the complaint did not result in a substantial change from the allega-

---

*See footnote, *ante*, page 997.

tion which was held to be nonactionable in *Okun, supra,* 29 Cal.3d at pages 459-460.

Appellant then asked the trial court for leave to file a third amendment stating that it is prepared to allege that respondents "expressly charged that Maple 'bribed' Stone." The trial court denied the request for a new leave to amend.

While we might be disposed to grant an additional leave to amend in a usual tort case, we are mindful that the present case seeks to inhibit fundamental First Amendment rights. Where such precious rights are involved, "speedy resolution of cases . . . is desirable" to avoid a chilling effect upon the exercise of free speech. (*Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 685 [150 Cal.Rptr. 258, 586 P.2d 572].)

This action is directed at citizens who were lawfully working through the political process. Respondents have been required to defend this case for nearly five years, presumably at private expense.

The wisdom of Justice Mosk's dissent in *Okun, supra,* 29 Cal.3d 442, seems particularly compelling in view of the passage of time in this case. "[T]here comes a time when the finality of litigation is almost as important as the decision therein. In the preservation of the free exercise of speech, writing and the political function, the early termination of this lawsuit is highly desirable. We should discourage attempts to recover through the judicial process what has been lost in the political process." (*Id.,* at p. 461.)

At this late date, appellant has exploited the resources of the trial and appellate courts and the defendants sufficiently. The trial court did not abuse its discretion in denying appellant the opportunity to begin again.

### DISPOSITION

The judgment of dismissal is affirmed. Respondents are awarded their costs on appeal. In addition, sanctions are imposed against appellant's counsel, Levy & Norminton, in the sum of $20,000, $10,000 each payable to respondent Okun and to respondents Harris and Ruden jointly.

Danielson, J., and Arabian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1984. Kaus, J., did not participate therein. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.