[Civ. No. 20683. Second Dist., Div. Two. Mar. 9, 1955.]

SAMUEL L. SIMON et al., Respondents, v. BEMIS BROTHERS BAG COMPANY (a Corporation), Appellant.

Paul F. Moore for Appellant.

George I. Devor for Respondents.

MOORE, P. J.—The purpose of this opinion is to demonstrate to appellant that under the rules of appellate procedure, the judgment now under review cannot be reversed. Not that its appeal is without merit, but because the law cannot alter its doctrines or its methods in determining whether any litigant has enjoyed a fair trial. These parties have submitted an acrid controversy to the arbitrament of reason under the guidance of long established principles. That the learned trial judge might with honor have decided for appellant is obvious upon a review of the record. But the flaming facts proved by respondents so enthralled the heart of his intelligence that he was compelled to adopt them as the basis for decision. Because the proof appropriated by the court is the warp and woof of the judgment, it ill behooves the reviewing court to linger among the charred ruins of the evidence introduced by appellant.

On July 13, 1951, "the windows of the heavens were opened and the floods descended" upon the fair State of Kansas. The resultant waters overran the Kansas River which in turn inundated portions of Kansas City and fatally injured the merchandise and the plant of appellant. Many types and sizes of bags were rendered unfit for the salesroom of appellant. Consequently, they were offered for sale as damaged merchandise. Pursuant to appellant's invitation, the witness Schneider, agent for respondents, visited the scene left by the disastrous flood in July, 1951, saw that the bags were in bales, "scattered over a very large field; some of them completely broken, some of them were partially broken open." He closed a deal with appellant "for so much apiece and didn't know exactly how many bags, and for 289,795 bags was to pay $15,000, the balance sight draft and bill of lading." That made the price $85 per thousand bags. A week later, respondent Simon visited appellant's plant and found that the bags had been wrapped and baled and fastened with wire. Each bale was marked with a heavy tag bearing the order

number, name of customer and number of bags. It was fastened with heavy wire. The bales so tagged were hauled from appellant's factory to a vacant lot in North Kansas City and placed on a railroad siding to be loaded for shipment; they were there guarded by a night watchman employed by appellant. Employees of appellant counted the bales, but they "assumed that there were a given number of bags to a particular bale."[*]

The bales of bags were finally loaded onto three wooden cattle cars and duly arrived at San Pedro in three cars with their seals intact. They stood on a siding about a block from the Harbor Laundry. The seals were broken by Mr. Schneider on behalf of respondent, and by Elbert Dunscomb, superintendent of the laundry. Both men entered the cars. They caused the cotton bags to be conveyed in the laundry's trucks to the laundry and to be guarded and watched during transportation. The cotton sacks were laundered, and rebaled after a double count. The laundry processed 210,100 cotton bags, the total from the three cars, all done under the immediate supervision of Mr. Dunscomb. The latter made clear that he had inspected both sides of each car before the seals were broken. Attempts had been made to remove some of the bags. The corners of about 15 bags were pulled out. "Although they hadn't been able to apparently take anything from that car, someone had attempted to do so. . . . The slats on these cattle cars I estimate to be three inches apart." The cars had been on the siding at San Pedro less than an hour before Mr. Dunscomb went to open them about 4 p. m. His trucks arrived before the seals were broken. The bundles of sacks were not stacked in rows in the cars. He segregated the cotton from the burlap and paper. The employees of the Harbor Laundry unloaded only the cotton bags. It required 14 hours of continuous work throughout the night. The second and third cars were successively unloaded in the same manner without stopping. There were two men present guarding the inside and outside of each car during the period of unloading. When the bags from the first car arrived at the laundry, the major portion were "put in process." directly into the waiting washers. The balance were stored inside a room adjacent to the laundry washroom. The second car unloaded into another building south of the washroom but on the premises. The third car repeated the first car in oper-

---

[*]Testimony of witness Bayne, manager of appellant's plant.

ation. All the bags ''were within a building or within a closed area next to a building, enclosed and locked. The loading was not done through an open doorway, it was done over the top of a wall at a truck level, approximately six feet . . . we unloaded over the top of it.''

The several kinds of bags were cotton, cotton and burlap, and cotton and burlap waterproof paperlined. The laundry had nothing to do with the bags made of burlap. They were handled at a later time by the Commercial Steel Company of respondents who used the laundry's trucks for the unloading. There was no shortage of the burlap and paperlined bags. The Commercial Steel Company did not unload any cotton bags. Either Mr. Dunscomb or a person under his supervision was in attendance at the segregating in the cars at all times.

The bags were counted after they had been laundered by passing them across a sorting, segregation table. They were there piled in stacks of 100, thence to a table where they were recounted and weighed; then tied on a second table. Tally sheets were maintained on the segregating table and by the weigher and they were compared at the end of the day. Such is the customary practice of the laundry. ■ By such testimony of Mr. Dunscomb, it was proved to the satisfaction of the court that only 210,100 cotton bags were received by respondents instead of 239,105.

It has become fundamental that when substantial evidence is found in the record to support a finding, a judgment will not be disturbed. ■ Evidence will not be reweighed, however strongly the appellant's evidence may have impressed the reviewing court. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Scott* v. *Nevis*, 120 Cal.App.2d 619, 621 [261 P.2d 797]; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

Appellant's implication that respondents were responsible for the loss for the reason that it occurred in transit after sale and delivery to respondents is answered by the conclusion of the court that ''because of unsettled conditions and imperfections in the manner of counting, the figure given by the defendant is not correct and that there was, in fact, the shortage claimed by plaintiffs.''

■ Appellant assigns as error the ruling which excluded testimony of an oral agreement of sale between the parties, and the facts and circumstances surrounding the agreement. It cites in support of its contention: Civil Code, sections 1541,

1698; *Standard Oil Co.* v. *Johnson*, 24 Cal.2d 40 [147 P.2d 557], in which it is said that whether delivery to a carrier constitutes delivery, depends upon the intention of the parties as ascertained from the contract and other circumstances. There are two answers to such contention: (1) the court overruled respondents' objection to the question; (2) it is a familiar rule that conversations and negotiations preceding the execution of a written contract are inadmissible as having been merged in the writing. (Civ. Code, § 1625; *Lifton* v. *Harshman*, 80 Cal.App.2d 422, 432 [182 P.2d 222].) The admission of the testimony makes no difference in the result. Its incompetency to vary a written contract is a matter of substantive law. (*Ibid.*)

Respondents' complaint that the appeal is frivolous is hardly justified. The proof introduced by appellant was substantial and persuasive and was presented in a courteous and gracious manner. To the impartial mind it is clear that appellant's counsel, after nursing the facts of his case for three years could believe in it so fervently that he might convince a reviewing court of the injustice he erroneously felt had been done his client.

The motion to fine for a frivolous appeal is denied.

The judgment is affirmed.

Fox, J., concurred.

McComb, J., concurred in the opinion.