[Civ. No. 63509. Second Dist., Div. Five. Aug. 30, 1983.]

M. E. HERSCH et al., Plaintiffs and Respondents, v.
CITIZENS SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Appellants.

**COUNSEL**

Stephen M. Fleishman, Marc E. Brown, Samuel Meyerhoff, Lascher & Lascher* and Edward L. Lascher* for Defendants and Appellants.

Hillel Chodos for Plaintiffs and Respondents.

*Representation commenced after proceedings to assess sanctions had begun.

## Opinion

NELSON, J.*—Defendants, as joint venturers, gave plaintiffs a promissory note secured by a pledge of certain bonds. The security agreement between the parties provided that if the bonds decreased in value the defendants would pledge additional bonds. The bonds decreased in value. The defendants did not pledge additional bonds. Plaintiffs accelerated the note, foreclosed on the security and sold it for less than the amount of the note. This is an appeal by the defendants from a judgment against them for the difference between the amount of the note and the amount received from a sale of the security.

Defendants admit the validity of the security agreement and their failure to provide the required additional security but appeal from the judgment upon the grounds that the trial court improperly refused to permit evidence of lack of good faith on the part of plaintiffs and upon the court's refusal to give the jury certain instructions regarding waiver and estoppel.

We affirm.

### FACTS

In 1978 defendants were the holders of an option to purchase an apartment complex from plaintiffs. In December 1978 defendants exercised this option and as a part of the consideration for the purchase gave to plaintiffs a promissory note for $4 million due in January 1982. This note was given together with a security agreement wherein defendants were to pledge, as security for the payment of the note, bonds of a fair market value equal to the face value of the note. The type and quality of bonds required were spelled out in the security agreement. Plaintiffs were to have possession of the pledged collateral but the defendants were to have the benefit of any interest or dividends earned upon it and were also to retain any profit earned from a sale or trade of the collateral or from the increases in its market value. Defendants were also given the right to trade the pledged bonds for others of equivalent value. In November 1979 the plaintiffs were holding bonds of a total face value of $4,650,000, the market value of which had decreased to $3,430,000. On November 15, 1979, plaintiffs wrote to the defendants by certified mail notifying the defendants of the present value of the bonds and demanding that defendants provide additional collateral as specified in the security agreement. The defendants admit the receipt of this letter and

---

*Assigned by the Chairperson of the Judicial Council.

admit an obligation to post additional collateral so as to bring the market value up to $4 million. Thereafter, in late November an attorney for the plaintiffs had a conversation, in a social setting, with one of the individual defendants (Rosen) during which conversation he advised Rosen that the plaintiffs really wanted additional collateral. Rosen replied that he intended to contact the plaintiffs and provide additional security. In other conversations during December and January the same attorney had additional conversations with Rosen in which Rosen was urged to contact plaintiff and fulfill his commitments under the security agreement. There were several other casual meetings of one or another of the plaintiffs and one or more of the defendants thereafter. At each of these meetings the matter of the security was discussed, and although no sense of urgency was conveyed by the plaintiffs, the defendants in each instance promised to discuss the matter seriously at a later date. On March 6, 1980, plaintiffs sent another certified letter to the defendants referring to the previous demand for additional collateral and pointing out the necessity for compliance within five days. In this letter notice of default was given and of plaintiffs' election to accelerate the principal balance on the note to five days after the date of the letter. On March 10, 1980, the day before the payment was due according to the terms of the March 6 letter, one of the defendants (Kates) telephoned the plaintiffs and offered "other collateral." On March 11, defendants delivered a letter to the plaintiffs in which defendants offered to supply trust deeds on certain real property as additional security. Real property trust deeds were not the type of security called for by the security agreement. No request for extension of time was included in the letter.

On March 13, the plaintiffs through a registered professional investment advisor arranged for the sale of the bonds on the regular over the counter market and through three separate major brokerage houses sold the total bonds for $3,145,000. On the following day plaintiffs commenced this action to recover the deficiency of approximately $1 million remaining due on the note after deducting the amount realized from the sale of the collateral bonds.

The trial was before a jury and the matter submitted to the jury for determination of three issues by special verdict. The issues were: (1) Were the bonds in question collateral which threatened to decline speedily in value; (2) were the bonds in question of the type which were customarily sold on a recognized market; and (3) did the plaintiffs after November 15, 1979, and on or before March 6, 1980, waive the right to require defendants to provide bonds with a market value of $4 million based upon the letter of November 15, 1979. The jury's answers to the first two questions were in the affirmative and as to issue No. 3, the answer was no. The court later

made a determination of the amount of judgment based upon the special verdict. No question is raised concerning the propriety of the court's determination of damages based upon the special verdict. Indeed, each side proposed a form of special verdict which anticipated that the final determination of damages, if any, would be left to the judge.

The jury was fully and fairly instructed upon all issues embraced within the requested special findings. Thus, if it was proper for the trial court to submit the matter to the jury upon the basis of the three issues ultimately determined, no basis for appellate relief exists. We have concluded that the court properly limited the case to those issues.

I

The defendants contend that the jury should have been permitted to decide whether defendants were entitled to *another* notice of default and request for additional collateral based upon plaintiffs' failure to foreclose and sell immediately upon the expiration of five days after the November 15th letter. They urge that forbearance on the part of plaintiffs until March 6th amounted to a "waiver" of plaintiffs' right to have defendants perform according to the security agreement until five days had expired after a *new* notice.

Since defendants did not have five days after receipt of the March 6th demand within which to post additional collateral, such a position is a natural one for the defendants to take. It is not supported, however, by either the facts or the law. The record shows that the plaintiffs sent out formal demand for additional collateral in November 1979. Thereafter, they endeavored repeatedly, if nicely, to have the defendants respond. No such response was forthcoming. That plaintiffs remained relatively calm in a falling bond market shows no more than confidence that the defendants would perform according to their agreement. It was, in fact, only defendants' failure to perform which disturbed the calm. Furthermore, the security agreement itself provides against an implication of waiver by delay. Paragraph No. 7 of that agreement provides: "No delay or omission of secured party in exercising any right or remedy created hereby . . . arising from any default by debtor . . . shall be construed as or deemed to be an acquiescence therein or waiver of such default, or waiver of or limitation upon the right of secured party to exercise at any time and from time to time thereafter, any right or remedy under this agreement." Such a covenant in an agreement is enforceable, and acceptance of interest after notice of default does not operate as a waiver thereof. (*Karbelnig* v. *Brothwell*

(1966) 244 Cal.App.2d 333 [53 Cal.Rptr. 335].)  ██  It was not error to refuse to submit this issue to the jury.

## II

██  Defendants assert that they should have been allowed to place before the jury the question of whether defendants were ever in default. Their theory, apparently, is that even though they admit that additional collateral as called for in the security agreement was not provided, and that they knew that the market prices of the bonds which had been pledged had fallen below the required level, plaintiffs, by waiting to foreclose, might have become resecured by rising bond prices. Although there is evidence that the bond market did rally briefly after defendants were notified of their default, there is no evidence nor do defendants contend, that the prices ever returned to the level required by the agreement. No question of fact is presented by this issue.

## III

██  Defendants claim that the jury should have been permitted to decide whether plaintiffs were estopped to assert a default and from foreclosure upon the security. No question of fact is presented concerning an estoppel.  ██  The elements of the doctrine of estoppel are that (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon; (3) the other party must be ignorant of the true facts; and ██ he must rely upon the conduct to his injury. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423].)  ██  Here, the evidence is insufficient as a matter of law to show the intentional misleading of defendants by plaintiffs. On the contrary, the evidence is that defendants were never ignorant of the true facts and kept promising that they would contact the plaintiffs and deal in recognition of those facts. Indeed, the "I'll call you" attitude of the defendants would support a contention by the plaintiffs that they had been lulled into a belief that defendants were earnest in their desire to fulfill the agreement.  ██  Where one of the elements is missing there can be no estoppel (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720 [125 Cal.Rptr. 896, 543 P.2d 264]; *Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326 [3 Cal.Rptr. 575].)

## IV

██  Defendants argue that the jury should have been instructed concerning the sections of the Commercial Code having to do with good faith,

commercial reasonableness, and notice and that the jury should have been requested to make findings upon these issues.

The questions of reasonableness and notice in this case are answered by the Commercial Code itself and by the findings of the jury. The jury found that the bonds in question were of the type customarily sold on the recognized market, and were collateral which was threatening to decline speedily in value. There is no dispute that the bonds were sold upon the regular market and obtained the highest market price. The sale of bonds through regular market channels cannot be attacked upon the grounds of commercial unreasonableness. Other than to suggest that perhaps it might have been more reasonable for plaintiffs not to have sold the bonds at all, or to have waited even longer to sell them, defendants do not offer any evidence of unreasonableness. In light of the jury's conclusions notice is not required under the Commercial Code and commercial reasonableness has been proved. (Cal. U. Com. Code, § 9504, subd. (3).)

V

■ The trial court correctly sustained objection to defendants' proffered evidence of bad faith. Bad faith, if one is mindful of the definitions contained in the Uniform Commercial Code, would have to be described as "[dis]honesty in fact in the conduct or transaction concerned." (See Cal. U. Com. Code, § 1201, subd. (19) defining good faith.)

None of defendants' evidence was offered to prove that plaintiffs' conduct was dishonest or corrupt. Even if it could be established that plaintiffs profitted economically by foreclosure, and that the collateral when sold and the proceeds invested at the rates then current was worth far more than performance by defendants upon the note would have been, the plaintiffs were entitled to exercise their rights under the security agreement. They were not required to choose the least profitable manner of doing so. Likewise, even if it were proved that the plaintiffs were motivated not to forbear further by economic factors outside this transaction, or even by outright greed, no dishonesty is shown where only legal rights are being enforced. Reasons or lack of reasons are thus irrelevant and the court properly refused evidence thereof.

■ This matter has been under submission following a hearing granted pursuant to *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]. The case has been considered for the purpose of determining whether the appeal in this matter was taken solely for the purpose

of delay so as to bring into application the provisions of Code of Civil Procedure section 907.[1]

## VI

We find on the basis of the record and the hearing that the appeal taken by defendants in this case was for the purpose of delay. The evidence is persuasive that every tactic employed by defendants since the answer to the complaint was prompted by a desire to secure the advantage of the differential between interest rates obtainable in the open market and the legal rate applicable to judgments during the trial on appeal. Defendants argue loudly that the appeal taken was based upon valid and arguable legal grounds and thus cannot be held to be frivolous. We disagree.[2] Defendants support their argument with declarations of reputable legal scholars. Tested by this theory, however, it would virtually never be possible to hold an appeal frivolous. Every legal concept, even the most cherished and long observed, is subject to scrutiny, and even challenge, under proper circumstances. Code of Civil Procedure section 907 therefore must be read as requiring an inquiry into the *motive* of an appellant for prosecuting his appeal, as opposed to an evaluation of his relative chance for success therein. Furthermore, no determination of frivolousness is necessary when it is found that the purpose of appeal was *delay.* Delay, as a motive, is specifically addressed and made sanctionable by the statute. Defendants' motive in this case is as easy to understand as it is difficult to hide. For nearly five years defendants have had the use of approximately $1 million legally owed by them to plaintiffs. It is common knowledge that a conservative investment during this same period would have earned annual interest greatly in excess of the 7 percent, and later 10 percent, payable upon civil judgments. In this type of market good investment counsel could not ignore the fact that postponement of payment of this judgment was a profitable venture. Given the legal education and investment sophistication of defendants in this case, and their indisposition ever to post the collateral called for in their agreement with plaintiffs, we are compelled to the conclusion that material gain through delay was and is their motive.

## VII

■ Having determined that the appeal in this case was taken for the purpose of delay, we must address the subject appropriate remedy. The

---

[1]Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

[2]We disagree with this contention and also the argument that this appeal was not frivolous. The legal arguments propounded by defendants at the trial court level and here on appeal totally lacked merit.

statute itself provides that *damages* may be added to the costs on appeal. Although the actual damages sustained by plaintiffs in the form of lost interest might be appropriately assessed, there is nothing in the record here from which calculation of such an amount can be made. No inquiry was made into the subject at the *Flaherty* hearing, nor were counsel placed on notice that any such inquiry might be made. Absent any basis for direct measurement of damages, we are left to assess such an amount as will bear some rational relationship to the circumstances of the parties and to the purpose of Code of Civil Procedure section 907.

We find to be just, and add to plaintiffs' costs on appeal, damages in the sum of $125,000. Attorney's fees on appeal are awarded to plaintiffs in an amount to be determined by the trial court.

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 28, 1983, and appellants' petition for a hearing by the Supreme Court was denied November 10, 1983.