[No. B035356. Second Dist., Div. Four. Oct. 17, 1988.]

MURRAY C. ZIMMERMAN et al., Plaintiffs and Respondents, v. DREXEL BURNHAM LAMBERT INCORPORATED, Defendant and Appellant.

154

**COUNSEL**

Keesal, Young & Logan, Samuel A. Keesal, Jr., Robert H. Logan, Robert D. Feighner and Dawn M. Schock for Defendant and Appellant.

Fierstein & Sturman, Lee F. Colton, Robert S. Mann and Robert A. Schwartz for Plaintiffs and Respondents.

**OPINION**

McCLOSKY, Acting P. J.—This is an appeal of a June 16, 1988, trial court order which denied the motion of appellant Drexel Burnham Lambert Incorporated (Drexel) to compel arbitration and imposed $5,840 in sanctions on Drexel and its counsel, the law firm of Keesal, Young & Logan. The trial court found that the motion "was filed in bad faith and solely for the purpose of delay, based on counsel's failure to file the motion earlier and contradictory statements under oath."

Drexel filed a notice of appeal the next day. Its notice of appeal cites a new case, on which case the Keesal, Young firm was counsel, which held that an appeal of a denial of a motion to compel arbitration stays all trial court proceedings. (*Prudential-Bache Securities, Inc.* v. *Superior Court* (1988) 201 Cal.App.3d 924 [247 Cal.Rptr. 477], decided May 11, 1988.) The scheduled trial date was vacated due to the pendency of the appeal.

Respondents have moved to dismiss the appeal and for sanctions. Although the record on appeal had not been completed at that time, their motion included an appendix which contains a complete copy of the record.

The record on appeal has now been filed with this court. It supports the trial court's rulings and shows that dismissal of the appeal and sanctions are appropriate.

I

In July 1982, the plaintiffs and respondents, Mr. and Mrs. Zimmerman and Mr. and Mrs. Oetzel (hereinafter respondents), sued Drexel (a stock brokerage firm), William Atkinson (a Drexel broker) and other defendants for the fraudulent mismanagement of their two securities accounts between 1974 and 1981. Respondents sought over $1 million in actual damages, plus punitive damages.

Six years of very active litigation ensued.

On June 1, 1988, shortly before the fourth continued trial date of June 20, 1988, Drexel for the first time served a motion to compel arbitration. It relied on the arbitration clauses in the customer's agreements which respondents had signed in the 1970's. Drexel asserted that the motion was made "as soon as the agreements containing the arbitration clauses were discovered in the broker's files." Copies of the agreements were attached to the motion.

Dawn M. Schock was the associate at the Keesal, Young firm who was primarily responsible for Drexel's defense. Her declaration stated that she received access to Atkinson's files on May 9, 1988. When she reviewed the files on May 22, 1988, she "discovered clear and legible copies of the customer's agreements" for the two accounts. Her "review of those documents, indicated that paragraph 16 of each Customer's Agreement provided for arbitration." She therefore asked respondents' counsel on May 25, 1988, to select an arbitration forum, and moved to compel arbitration when they refused.

A declaration from Mr. Atkinson stated that he was presently employed by another brokerage firm but had had respondents sign the customer's agreements in 1977, while he was working for Drexel. He kept copies of the agreements in his files on those accounts, and granted Ms. Schock access to them on May 9, 1988.

Respondents opposed the motion to compel arbitration. They argued that Drexel had waived the right to arbitration by not mentioning it during the preceding six years, which had included two settlement conferences, thirty-two depositions, five sets of document requests, seven sets of interrogatories and three sets of requests for admission. Nor was the subject of arbitration

mentioned in Drexel's answer to the third amended complaint (which raised fourteen defenses), in its two demurrers, in its motion to dismiss and quash service, in its motion for summary judgment, or in its two discovery motions. Respondents had expended almost $400,000 on pretrial proceedings prior to the demand for arbitration.

Respondents also argued that Drexel must have known of the arbitration provision prior to May 1988, since Ms. Schock had mailed a copy of one of the customer agreements to respondents' counsel on December 8, 1986, and had marked a copy of one of the agreements during the deposition of a Drexel officer on February 9, 1988. Moreover, since Drexel had drafted the customer agreements, it necessarily knew they contained arbitration clauses. An attached declaration from a securities expert added that it was common knowledge in the industry that Drexel's agreements contained an arbitration provision.

Respondents further maintained that the participation of the Keesal, Young firm in the *Prudential-Bache* case showed that the motion had been filed with the knowledge that it would be denied and the hope that the delay on appeal would coerce a settlement from the respondents, three of whom were over sixty years old.

Respondents sought sanctions of $5,840, the amount of attorneys' fees, against Drexel and a specific finding that the motion was frivolous and brought in bad faith.

Drexel's reply included declarations from Ms. Schock and from Samuel A. Keesal, Jr., the senior member of the Keesal, Young firm.

Ms. Schock explained that she had discussed the effect of the arbitration provisions with Mr. Keesal after she discovered them on May 23, 1988. The decision to move for arbitration was based on the fact that "this was the first time [she] had seen legible copies of both customer's agreements." There was no discussion of the effect of an appeal on the potential denial of that motion, and she was not aware of the *Prudential-Bache* case until after the motion was filed.

Ms. Schock further stated that the arbitration clause was illegible in the copy of the customer's agreement she mailed respondents in December 1986. After respondents' attorney contacted her in November 1987 to complain about that illegibility, she obtained from Drexel a legible copy of the agreement for one of the two accounts. She believed that that copy was utilized at the deposition of the Drexel officer in February 1988. She did not see a legible copy of the customers' agreement for the other account until

May 1988. That was the first time she knew that arbitration could be compelled as to both of the accounts.

The declaration of Samuel Keesal, Jr., reiterated that the decision to move for arbitration was based on Ms. Schock's locating legible copies of both customer's agreements, and not on the *Prudential-Bache* case, which was unknown to him at that time.

At the hearing on the motion, Ms. Schock virtually conceded that there was an inconsistency between her original statement that she first had legible copies of the two agreements in May 1988, and her subsequent statement that she had a clean copy of one of them as of December 1987. The trial court ruled that it would be unfair and prejudicial to respondents to require arbitration on the eve of trial; that Drexel had known about the arbitration clauses for at least a couple of years; and that if Ms. Schock lacked a legible copy it was either because she did not ask for one or because Drexel failed to provide her with one. As indicated, it specifically found that the motion was brought in bad faith and for the purpose of delay, based on counsel's failure to make the request sooner and contradictory statements under oath.

## II

■ The above facts amply support the findings of the trial court. Even if Keesal and Schock were unaware of the *Prudential-Bache* case when they decided to move to compel arbitration, Schock's declarations were inconsistent regarding when she discovered legible copies of the agreements, and could not justify Drexel's failure to provide such copies earlier in the litigation. Moreover, it appears that Drexel could have utilized alternative methods to establish the existence of the arbitration clauses if legible copies of the signed agreements were unobtainable.

The trial court's action is also supported by case law upholding findings of prejudice and waiver where brokerage firms belatedly requested arbitration after engaging in pretrial proceedings which involved extensive discovery and numerous motions over a long period of time. (*Price* v. *Drexel Burnham Lambert, Inc.* (5th Cir. 1986) 791 F.2d 1156, 1158-1162 [17-month delay]; *Fraser* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (4th Cir. 1987) 817 F.2d 250, 251-252 [over four-year delay].) Prejudice is derived from the fact the opposing party must bear the costs of trial preparation, which arbitration is designed to avoid (*Price* v. *Drexel Burnham Lambert, Inc., supra,* 791 F.2d at p. 1159; *Fraser* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 817 F.2d at p. 252), and also results from the disclo-

sure of defenses and strategies (*Kaneko Ford Design* v. *Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1229 [249 Cal.Rptr. 544]).

The cases cited by Drexel primarily stand for the general propositions that public policy favors arbitration and a party seeking to establish waiver bears a heavy burden. The facts in Drexel's cases did not come close to the amount of delay and pretrial activity which occurred here. The only remotely similar case is *Fisher* v. *A.G. Becker Paribas, Inc.* (9th Cir. 1986) 791 F.2d 691, which involved three and one-half years of delay. *Fisher* is distinguishable, as the discovery which had been conducted there could be used in the trial of nonarbitrable claims, and the stock brokerage firm's right to arbitration only became enforceable when the United States Supreme Court changed preexisting federal law. Here, Drexel had a known right to arbitration which its attorneys maintained was unenforceable because of Drexel's unexplained failure to give them a legible copy of the agreements. Moreover, Drexel and its counsel failed to comply with their duty under the Discovery Act to furnish respondents a legible copy of the customer's agreements, which might have provided some notice of an intention or right to rely on the arbitration provision.

## III

While there is no merit to the appeal, the question remains whether we should grant the motion to dismiss at this time, or simply expedite briefing.

Respondents argue for an immediate dismissal and sanctions because: (1) Three out of four of them are in their late sixties. (2) The record on appeal is short, is already before this court, and involves only the limited issue of the motion to compel arbitration. (3) Soon after the notice of appeal was filed, Mr. Keesal telephoned respondents' counsel and offered to abandon the appeal if respondents would stipulate to asking the lower court to vacate the finding of bad faith and award of sanctions. (4) Drexel has followed a strategy of obstructing the case, as it was sanctioned twice previously for unjustified opposition to discovery requests. (5) Drexel failed to produce the second customer's agreement prior to its demand for arbitration. (6) Drexel had the agreements in its possession all along.

Drexel's opposition counters that it is entitled to the full briefing of the normal appellate process; that the appeal is very limited and could be processed quickly or expedited; that Mr. Keesal's efforts to settle the matter have been mischaracterized; that the appeal involves two substantial issues, waiver and sanctions; that the demand for arbitration was timely; that there was no inconsistency in Ms. Schock's declarations; that when she originally

said that she made the motion as soon as she discovered legible copies of the two agreements, what she really meant was that she made it as soon as she got a legible copy of the second agreement; and that neither the motion to compel arbitration nor the appeal were filed for the purpose of delay.[1]

■ Appellate courts have an inherent power to summarily dismiss any appeal which is designed for delay or which is based on sham or frivolous grounds. Appropriate sanctions may be imposed on the parties or their attorneys. (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 658 [94 Cal.Rptr. 398, 484 P.2d 70]; Cal. Rules of Court, rule 26(a).)

"[B]oth dismissal and the award of damages for a frivolous appeal may occur at an early stage of the appeal and need not await an opinion affirming the judgment." (*Agricultural Labor Relations Bd.* v. *Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 706, fn. 8 [238 Cal.Rptr. 780, 739 P.2d 140], citing *Coleman* v. *Gulf Insurance Group* (1986) 41 Cal.3d 782, 790 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

Although appellate courts do not normally dismiss an appeal as frivolous without a full briefing on the merits, "where the interests of justice require it, the court may exercise such power." (*Toohey* v. *Toohey* (1950) 97 Cal.App.2d 84, 85 [217 P.2d 108].) That disposition was found appropriate in *Toohey* where, inter alia, an inspection of the record showed that the appellant could not be granted relief, and the parties' contentions were fully set forth in the opening brief of the appellant and motion to dismiss of the respondent.

In *Robbins* v. *Sonoma County Flood etc. Dist.* (1955) 138 Cal.App.2d 291 [292 P.2d 52], the court discussed why appellate courts are reluctant to grant motions to dismiss appeals. Among the reasons are that such motions permit cases to be considered in advance of others which precede them on the calendar, need the same full examination of the record as is necessary for a hearing on the merits, and are determined before briefing is completed. "On the other hand, appellate courts have inherent power to dismiss appeals which have no merit when that situation is presented on the face of the record and can be readily ascertained. Grave public interest can also justify such preliminary examination as is necessary to determine the presence or lack of merit." (*Id.,* at p. 293.) *Robbins* found it appropriate on its facts to consider the merits pursuant to a motion to dismiss, and dismissed the appeal.

---

[1] Mr. Keesal initially filed a declaration with this court which stated that he was not aware of the *Prudential-Bache* decision at the time the notice of appeal was filed. He later indicated that that statement was erroneous and that, as he told the trial court, it was at the time the motion to compel arbitration was filed that he was ignorant of that decision.

Despite Justice McComb's blanket statement in *Gogerty* v. *Coachella Valley Junior College Dist.* (1962) 57 Cal.2d 727, 729 [21 Cal.Rptr. 806, 371 P.2d 582], that a motion to dismiss which necessitates a review of the record "will be denied," the preceding cases clearly show that such a motion will be entertained under appropriate circumstances.

■ Several factors are of special concern here.

(1) The respondents are elderly.

(2) The case has already been in progress for over six years.

(3) The trial court found that appellants utilized bad faith delaying tactics, and similar allegations have been made before this court.

(4) The record is relatively short, and it readily shows that the appeal lacks merit. As previously indicated, the record and case law abundantly support the trial court's rulings. The finding that Drexel waived the right to compel arbitration is binding on appeal unless the record establishes lack of waiver as a matter of law. (*Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 781 [191 Cal.Rptr. 8, 661 P.2d 1088].) The flimsy excuse offered by Drexel for its six-year delay in seeking arbitration clearly could not justify overturning the trial court's finding of waiver. Similarly, the trial court's award of sanctions can be reversed only if Drexel can meet the difficult burden of establishing an abuse of discretion. (*Karwasky* v. *Zachay* (1983) 146 Cal.App.3d 679, 681 [194 Cal.Rptr. 292].) Since there is absolutely no evidence that the trial court misunderstood Ms. Schock's declarations, and, in any event, no valid excuse for Drexel's failure to request arbitration sooner, there is a patent absence of an abuse of discretion in the sanctions award here.

We therefore conclude that the unusual circumstances here justify considering the appeal on the merits and dismissing it at this time.

## IV

■ A further question raised by respondents is whether we should impose sanctions in addition to those already imposed by the trial court.

We reject as too extreme respondents' suggestion that the circumstances justify the sanction of striking Drexel's answer and entering its default.

Penalties may be assessed where it appears an appeal was frivolous or taken solely for delay. (Code Civ. Proc., § 907; Cal. Rules of Court, rules 26(a) and 135(a).)[2]

■ *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] held that an appeal may be frivolous under either a subjective standard which examines the motive of the appellant and counsel or an objective standard which examines the merits of the appeal from a reasonable person's perspective. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*Id.,* at p. 650.) Moreover, due to due process considerations, "[p]enalties for prosecuting frivolous appeals should not be imposed without giving fair warning, affording the attorney an opportunity to respond to the charge, and holding a hearing. Further, when imposing sanctions, the court should provide the attorney with a written statement of the reasons for the penalty." (*Id.,* at p. 654.)

Subsequent to *Flaherty,* two divisions of this district have filed opinions awarding sanctions for frivolous appeals.

In *Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002 [194 Cal.Rptr. 628], Division Five found no merit in various contentions of error arising from a civil jury trial. It added sanctions of $125,000 on the ground the appeal had obviously been taken for the purpose of delay, so that the appellants could retain the use of the money they owed the respondents and benefit from the difference between the legal interest rate and the interest rate obtainable on the open market.

■ *Hersch* explained that the test was not whether an appeal was based on arguable legal grounds, since virtually any legal concept could be deemed arguable. "Code of Civil Procedure section 907 therefore must be read as requiring an inquiry into the *motive* of an appellant for prosecuting his appeal, as opposed to an evaluation of his relative chance for success therein. Furthermore, no determination of frivolousness is necessary when it is found that the purpose of appeal was *delay*. Delay, as a motive, is

---

[2] Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

Rule 26(a) states, in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . , the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

Rule 135(a) contains language virtually identical to that of rule 26.

specifically addressed and made sanctionable by the statute." (*Hersch* v. *Citizens Savings & Loan Assn., supra,* at p. 1012.)

In *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997 [205 Cal.Rptr. 532], Division Three imposed $20,000 in sanctions on counsel for a frivolous appeal, on the ground that some of the appellant's claims had already been conclusively determined by an earlier Supreme Court decision in the case. Since the appeal was partially frivolous under the objective standard of *Flaherty,* it was unnecessary to consider whether frivolity was also shown on a subjective basis. The amount of sanctions was based on factors like the protracted length of the litigation, delay in resolution of the appeal, undue burden on the legal system, consumption of the court's time, and need to deter that type of conduct in the future. (*Id.,* at p. 1011.)

Finally, in *Kapelus* v. *Newport Equity Funds, Inc.* (1983) 147 Cal.App.3d 1, 9 [194 Cal.Rptr. 893], the Fourth District assessed $5,000 in sanctions against the appellant, an attorney, on the ground it was apparent that "his actions have been designed to delay foreclosure and the appeal here was taken for the sole purpose of delay to retain the premises."

The above authorities show that we may impose sanctions if we find that the appeal was subjectively or objectively frivolous or was taken solely for the purpose of delay.

 We find that at least the portion of the appeal which was directed to the finding of waiver was objectively frivolous. Given the pertinent case law and the palpably weak excuse offered for the six-year delay, no reasonable attorney could have believed that this court would find, as a matter of law, that Drexel had not waived its right to arbitration.

The above finding means we need not inquire into Drexel's subjective motivation for filing the appeal. (*Maple Properties* v. *Harris, supra,* 158 Cal.App.3d 997, 1009.)

The issue of sanctions has been fully briefed by both sides. In compliance with *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 654, we issued an order to show cause regarding sanctions, and heard oral argument on the subject. Pursuant to an agreement between the court and counsel for each of the parties, it was agreed that counsel for plaintiffs and respondents would submit an affidavit or declaration within 24 hours after oral argument regarding their attorney's fees and costs claimed as sanctions, and that defendant and appellant would have 24 hours thereafter to file an affidavit or declaration in opposition thereto. Pursuant to that agreement, Lee F. Colton, Esq., submitted a declaration stating that the total amount of legal

fees and costs incurred by his clients in connection with Drexel's appeal is $29,141.25, together with the breakdown of those fees and costs. We have carefully considered Mr. Colton's declaration and the appendix to it and have concluded that the reasonable value of the reasonable amount of fees and costs of his firm and clients in connection with the appeal, exclusive of the trial court's amount of fees and costs, is in the total amount of $9,000. We therefore impose that amount ($9,000) as sanctions. This opinion constitutes the written statement of reasons required by *Flaherty*.

The appeal is dismissed. Respondents to recover their costs and $9,000 in attorney's fees.

George, J., and Goertzen, J., concurred.