[No. B045302. Second Dist., Div. Seven. Dec. 10, 1990.]

ROSE KABBE, Plaintiff and Appellant, v.
MELVIN W. MILLER, Defendant and Respondent.

**COUNSEL**

Rose Kabbe, in pro. per., for Plaintiff and Appellant.

Hartley & Hartley and Joseph M. Hartley for Defendant and Respondent.

**OPINION**

**JOHNSON, J.**—Plaintiff filed this malpractice action against her former attorney, Melvin W. Miller, on December 30, 1987. Miller successfully

moved for summary judgment on the ground the suit was barred by the one-year statute of limitations. (Code Civ. Proc., § 340.6.)[1] Plaintiff filed a timely notice of appeal.

## FACTS AND PROCEEDINGS BELOW

This is a legal malpractice action arising out of defendant's representation of plaintiff in a dissolution proceeding. The complaint accuses defendant of failing to introduce relevant evidence in the proceeding and various other wrongs. The trial court granted defendant's motion for summary judgment on the ground plaintiff's complaint was barred by the statute of limitations. We have reviewed the parties' moving papers and find the summary judgment was correct on the statute of limitations ground as well as on the merits of plaintiff's claims. The uncontradicted evidence in support of defendant is outlined below.

## DISCUSSION

I.  *The Uncontradicted Evidence Submitted to the Trial Court Supported the Summary Judgment.*

■  Ms. Kabbe's principal complaint against Mr. Miller is that he failed to introduce evidence which would have resulted in a more favorable outcome in her dissolution proceedings. Contrary to Ms. Kabbe's assertions, the undisputed evidence shows most of this evidence was, in fact, introduced in the dissolution proceedings. We refer specifically to the W-3 form showing husband's earnings; records from Loeb Richards brokerage firm showing stock purchased by husband; evidence showing ownership of a condominium in Hawaii; and evidence of husband's life insurance policies.

■  Ms. Kabbe alleges Mr. Miller failed to introduce records of joint checking accounts which would have shown the standard of living of the parties. Ms. Kabbe claims she first learned Mr. Miller had possession of these records in January 1987. However, the existence of records of a joint checking account and Mr. Miller's failure to introduce them must have been known to Ms. Kabbe at the time of the dissolution proceedings in 1984. Ms. Kabbe could have discovered the whereabouts of these records

---

[1] Section 340.6, subdivision (a) provides:
"An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

through the use of reasonable diligence within a year of the judgment in the dissolution action. Thus, this claim is barred by the statute of limitations.

The statute of limitations also bars Ms. Kabbe's claims relating to Mr. Miller's handling of the proceeds of her personal injury action and a trust deed. The personal injury action was settled and the proceeds distributed prior to the judgment in the dissolution action in 1984. Furthermore, the record shows Ms. Kabbe complained to the State Bar in October or November of 1986 regarding Mr. Miller's handling of the personal injury proceeds. She complained at the same time of Mr. Miller's handling of the trust deed. Therefore, it is clear she discovered the alleged misconduct more than a year before filing suit.

■ Next, Ms. Kabbe alleges she did not discover until January 1987 that Mr. Miller had in his possession "transcripts" containing information about the husband's business dealings, and interrogatories from the husband's law firm, and that Mr. Miller had forged subpoenas in the divorce action. Ms. Kabbe does not explain how these items relate to the injury she allegedly suffered. Therefore, even accepting her allegations about the date of discovery, there is no triable issue of fact raised as to defendant's malpractice.

■ Finally, Ms. Kabbe alleges Mr. Miller failed to provide her with records of certain stock transactions in time to file a suit against the brokerage firm that handled the transactions. The evidence shows Mr. Miller supplied the records before the statute of limitations expired on a suit against the brokerage firm. Furthermore, we see no reason why failure to possess these records prevented Ms. Kabbe from *filing* a lawsuit.

■ Ms. Kabbe argues on appeal she did not suffer actual harm from Mr. Miller's malpractice until she received her file from him in January 1987. Citing our decision in *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 72-73 [240 Cal.Rptr. 423], she argues the one-year statute of limitations should run from the time she received the file. But it is clear from her complaint the harm Ms. Kabbe suffered, if any, occurred at the time of the judgment of dissolution or before. Indeed, in her reply brief Ms. Kabbe states:

"Because of the outrageous conduct of Respondent's failure to produce the files and records at trial. (*Sic.*) The outrageous conduct of Respondent caused Appellant to receive a mere $200 per month in child support; emotional distress caused by Respondent's outrageous conduct; further financail [*sic*] ruin." *Robinson* is inapplicable to the facts of this case.

## II. *Sanctions for a Frivolous Appeal Are Not Appropriate in This Action.*

■ Respondent's brief requests sanctions against Ms. Kabbe in the amount of $3,000 for bringing an appeal which "indisputably has no merit." *(In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) In *Flaherty,* our Supreme Court instructed "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." *(Ibid.)*

We recognize a litigant appearing in propria persona is generally held to the same restrictive rules and procedures as an attorney. *(Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 638-639 [178 Cal.Rptr. 167].) However, we have found no case imposing sanctions on a propria persona appellant solely on the ground the appeal lacked merit. In each case the court has found some impropriety in addition to lack of merit to support the imposition of sanctions. In some cases the court found the appeal was brought for the purposes of delay. (See, e.g., *In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 75 [214 Cal.Rptr. 919]; *Weber* v. *Willard* (1989) 207 Cal.App.3d 1006, 1010 [255 Cal.Rptr. 165].) Because Ms. Kabbe is the plaintiff in this action, delay is not a factor here. In *Sui* v. *Landi* (1985) 163 Cal.App.3d 383, 385-386 [209 Cal.Rptr. 449] and *Weber* v. *Willard, supra,* 207 Cal.App.3d at page 1010, the court found the appeal was brought in order to harass the respondent. We find no evidence of a vexatious motive in this case and none is alleged by respondent. In both *Sui* v. *Land* and *Weber* v. *Willard* the court noted the propria persona litigants, although not attorneys, were experienced litigators. We do not believe it is appropriate to hold a propria persona appellant to the standard of what a "reasonable attorney" should know is frivolous unless and until that appellant becomes a persistent litigant.

### DISPOSITION

The judgment is affirmed. Respondent's request for sanctions is denied.

Woods (Fred), J., concurred in the judgment.

**LILLIE, P. J.,** Concurring in the Judgment and Dissenting.—I concur with the majority in affirming the judgment, but would grant respondent's request for sanctions.

In respondent's brief, and supported by declaration of his appellate counsel, Melvin W. Miller has requested imposition of a $3,000 sanction for

attorney's fees against appellant for filing a frivolous appeal—fair warning that such sanction would be considered by the court and affording appellant an opportunity to respond to the charge and be heard. (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 524, fn. 12 [258 Cal.Rptr. 506].)

Sanctions may be awarded for the filing of a frivolous appeal. (§ 907, Code Civ. Proc.;[1] see also Cal. Rules of Court, rule 26(a).)[2] *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] sets forth alternative subjective and objective standards for determining whether an appeal is frivolous. "The subjective standard looks to the motives of the appellant and his or her counsel" and "[t]he objective standard [which] looks at the merits of the appeal from a reasonable person's perspective." "Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (31 Cal.3d at pp. 649-650.)

This appeal "indisputably has no merit"[3] and is frivolous under *Flaherty*'s "objective" standard. No "reasonable person" could in good faith believe

---

[1] Under section 907, Code of Civil Procedure, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

[2] California Rules of Court, rule 26(a) provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

[3] In her opening brief, appellant fails to raise any cognizable issue on appeal; instead, she uses her brief to try what she perceives to be her malpractice case to this court by advancing disjointed factual arguments based primarily on matters outside of the record, makes numerous irresponsible accusations against the trial judge, respondent and his counsel, and prays this court to award her damages in excess of $1 million and costs. Her reply brief contains the same irrelevant diatribes against the judge, respondent and his attorneys, an "Argument In Reply To Respondent's Brief" consisting of a factual argument to support her malpractice allegations and several inapplicable citations in brief comment on the statute of limitations which, she argues, does not apply and the summary judgment which, "was a sham" and "cover-up" for respondent's wrongful acts, and a prayer for reversal of the judgment, award of $1 million damages, costs, travel expenses, attorney service costs, costs on appeal and interest, and sanctions based upon respondent's "unnecessary hearings which caused [her] extreme financial hardship."

the appeal to have merit (*In re Marriage of Flaherty, supra*, 31 Cal.3d 637, 649; *Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 461 [212 Cal.Rptr. 743]), and no "reasonable attorney" could read appellant's briefs and the record before us and not conclude that the appeal is totally and completely meritless. (*In re Marriage of Flaherty, supra*, 31 Cal.3d 637, 649; *Swan* v. *Shelby Fine Arts*■ (Cal.App.); *Zimmerman* v. *Drexel Burnham Lambert Inc.* (1988) 205 Cal.App.3d 153, 164 [252 Cal.Rptr. 115]; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 16-17 [244 Cal.Rptr. 581]; *Bank of America* v. *Henkin* (1986) 185 Cal.App.3d 919, 921-922 [230 Cal.Rptr. 113].)

However, *Flaherty* cautions, "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (31 Cal.3d at p. 650, original italics.) The cases are legion that there also must be some showing that the appeal was prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment. The "subjective" standard looks to the motives of the appellant and his or her counsel, and I have no trouble concluding that Rose Kabbe prosecuted this appeal to delay the effect of an adverse judgment and to harass Melvin Miller.

The majority seems to think that because appellant is the plaintiff, "delay is not a factor here." I could not disagree more. While generally the motive to delay is to avoid paying a legitimate claim, as in *National Secretarial Service, Inc.* v. *Froehlich, supra*, 210 Cal.App.3d 510, 526, it also may be "to obfuscate the issues and extend the process of resolution," as in *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 132 [260 Cal.Rptr. 369]. Rosenthal satisfied the judgment, then insisted that his motive could not have been delay. Said the court, "We are not at all impressed by the argument that since Rosenthal had paid the judgment (and OMS had paid the sanctions), Rosenthal's motive could not be delay as there was nothing to delay. While it is true that CEH has received full payment, an appellant may not insulate himself from frivolous appeal sanctions by the mere act of satisfying the judgment. Delay, as that term is used in this context, does not simply refer to delay in *collection* of the judgment, but rather to delay in its *finality*. Until a judgment is final the respondent is not entitled to *retain* the judgment proceeds nor may the judgment be asserted as a basis for res judicata or collateral estoppel in any other litigation which may exist or arise between the parties. In addition, a respondent, even though in receipt of the judgment proceeds, must still expend time and treasure in defense of the judgment. It is the appellant's act of prosecuting an appeal for the improper motives of harassment (of the respondent) or delay (of judgment finality)

which supports the conclusion that the appeal is frivolous." (212 Cal.App.3d 96, 132, original italics.)

The advantage Rose Kabbe sought by prosecuting this appeal was two-fold. The first was to extend the process of resolution for as long as possible. The reason was to keep her lawsuit alive to give her the opportunity to improperly try her malpractice case to this court, and that is exactly what she did—by presenting factual arguments in her briefs, even asking us to award her a million dollars in damages for respondent's "wrongful acts." It is as if she knew she could not prevail on her appeal for she all but ignored it, failing to address any appellate issue until her all too brief comment regarding the statute of limitations in her reply brief. Her delaying tactics, obfuscation of issues and use of the appellate process for the improper purpose of trying her case here, forced respondent to expend time and effort and exhaust a substantial portion of his assets in defending the judgment appellant made no real effort to challenge.

The second improper motive was to harass respondent, and this she did. While it cannot be denied that she "fervently" believes in her "malpractice case," it is true that appellant has used her appellate briefs not only to delay resolution and try her malpractice case on an appellate level, but to deliberately accuse, demean, insult and harangue the trial judge,[4] respondent and his attorneys. I find not just an occasional diatribe made out of frustration, but a deliberate course of abuse consisting of unsupported accusations—of judicial misconduct,[5] unprofessional behavior of respondent and his coun-

---

[4] While the definition of a frivolous appeal does not encompass harassment of the trial judge, only the respondent, there can be little doubt that the kinds of attacks leveled against Judge Loren Miller have been a great embarrassment and humiliation to and, indeed, have harassed respondent. I consider such attacks on the judge only in that context.

[5] Among other things, appellant accuses: "Tyrannies of Judge [Loren] Miller abusive, hostile behavior, threats, throwing papers, cursing, instructing counsel to punch out Appellant, illegal tactics . . ."; he violated California Constitution, article VI, section 18 and California Code of Judicial Conduct, cannon 3A(3); Judge Miller permitted six unlicensed attorneys representing respondent to parade in his courtroom and present business cards; "The Presiding Judge advised the unlicensed attorney to settle in the amount of $1,000,000 or the Jury will award at least $5,000,000 in damages"; "The Presiding Judge backed Appellant against the wall; advised her that 'not one word of unlicensed attorneys should leave his chambers.' Appellant agreed to remain silent. The Judge promised a fair settlement in favor of Appellant." And again in her reply brief, "Prior to the summary judgment Judge Miller backed Appellant against the wall; advised her that he would help her with the Jury Trial if she remained silent to the unlicensed attorneys"; the judge was guilty of prejudicial misconduct in "condoning unlicensed attorneys to practice law in his courtroom; permitting original summons to be destroyed; padding the Clerk's Transcript with inadmissible, immaterial, prejudicial documents," and "barring court reporters from his courtroom"; her court file remained in the judge's courtroom so the public could not view it; Judge Miller permitted Mr. Hartley (appellate counsel for respondent) to file a false affidavit.

sel,[6] and conspiracy of counsel, respondent and the trial judge to "cover-up" respondent's "wrongful acts" by summary judgment, and frustrate her appeal.[7] Her failure in her opening brief to raise and discuss any appellate issue strongly suggests that at the outset her primary interest was to delay the finality of the judgment and harass respondent by venting her spleen on all connected with her lawsuit. Both her opening and reply briefs, consisting mostly of abusive language, could only harass respondent and cause him indignation, embarrassment and anger, necessitate the filing of a reply to a wholly meritless appeal taking time of counsel and obligating respondent for fees and costs on appeal, and take the time and use of facilities of our judicial system to process an entirely frivolous appeal and time of the court to read the record and the briefs, and write an opinion.

Missing is the factor found in most "improper motive" cases, repeated litigation, as in *Bank of America* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1637 [265 Cal.Rptr. 666]; *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 102-103 [260 Cal.Rptr. 369]; *Kim* v. *Walker* (1989) 208 Cal.App.3d 375, 385 [256 Cal.Rptr. 223]; *Weber* v. *Willard* (1989) 207 Cal.App.3d 1006, 1010 [255 Cal.Rptr. 165]; *Hummel* v. *First National Bank* (1987) 191 Cal.App.3d 489, 495 [236 Cal.Rptr. 449]; *Bistawros* v. *Greenberg* (1987) 189 Cal.App.3d 189, 193 [234 Cal.Rptr. 377]; *Sui* v. *Landi* (1985) 163 Cal.App.3d 383, 386 [209 Cal.Rptr. 449]. It is this factor and her propria persona status the majority uses to shield appellant from the consequences of her outrageous and deliberately destructive course of action. The majority says, "We do not believe it is appropriate to hold a propria persona appellant to the standard of what a 'reasonable attorney' should know is frivolous unless and until that appellant becomes a persistent litigant." (Maj. opn., *ante*, p. 98.) I strongly disagree. Given such a pronouncement,

---

[6] Against respondent, his counsel and the "unlicensed attorneys," appellant asserts: counsel appearing for respondent were six unlicensed attorneys who falsely represented themselves to be licensed and who engaged in "unauthorized practice of law," naming several in exhibits attached to her reply brief; at a hearing the judge advised appellant to show an "unlicensed attorney" the contents of large boxes of her records, files and exhibits and discuss settlement, "then Appellant was led to [a] dark room where more unlicensed attorneys ripped the evidence off of Appellant" which was "used in an unfair and illegal manner," and "Appellant was abused and harassed by Michael McEntee and other unlicensed attorneys"; respondent deliberately delayed serving documents on her causing her to hire "rush services" at great expense, "filed false affidavits and falsified court records throughout the pendency of these proceedings" and lied about her address; respondent's "unlicensed attorneys" abused and harassed her; another, "before a courtroom full of people . . . became upset, nervous and in a sudden outburst threw her papers at Appellant"; "The reason that the issue of the unlicensed attorneys was not raised before is due to the deception, fraud, coercion, crookedness."

[7] Further, appellant accuses: "The Summary Judgment in favor of Respondent was a sham. It was a mere cover-up for the wrongful acts of Respondent and his Attorneys"; the court, respondent and his counsel conspired to pad the clerk's transcript with inadmissible, immaterial and prejudicial documents.

one wonders just how much time must be lost, how much energy must be wasted, how much expense must be incurred, how much court time must be expended and how many respondents must be harassed before appellant becomes qualified for imposition of sanctions for a frivolous appeal. Allowing appellant's propria persona status to insulate her from sanctions in this case does violence to the underlying policy of section 907, Code of Civil Procedure and undermines the principle that a propria persona litigant should be held to the same standard, rules and procedure as a practicing attorney.

First, that appellant appears here in propria persona is no excuse for her conduct. "When an appellant decides to represent himself in propria persona, 'he is entitled to the same, but no greater, consideration than other litigants and attorneys. [Citations.]' (*Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 638 [178 Cal.Rptr. 167].) . . . A pro. per. litigant is held to the same restrictive procedural rules as an attorney. (*Nelson* v. *Gaunt, supra,* 125 Cal.App.3d at pp. 638-639.)" (*Bistawros* v. *Greenberg, supra,* 189 Cal.App.3d 189, 193.) I do not think that appellant, in the name of ignorance, should be able to squander limited judicial resources. Whether appellant represents herself or is represented by counsel, there is an abuse of the judicial process, and the same amount of court time is utilized and the same amount of time and money is spent by the opposing party in defending the judgment. Moreover, appellant here is not all that unfamiliar with the appellate process—she made several motions to augment the record, various applications and requests to the court, prepared and timely filed briefs in proper form, has some knowledge of the rules and authorities cited, and has more than a rudimentary understanding of the appellate process—indeed, it hardly can be said she was not fully aware of the nature and extent of her appellate undertaking.

Second, while appellant is not as yet a persistent litigant, no one, propria persona or otherwise, persistent litigant or not, should be permitted to abuse the appellate process by using an appeal for the purpose manifest here and to engage in the sort of conduct indulged here. Further, any good faith she might have had in pursuing her malpractice lawsuit for trial by way of appeal (improper as it is) does not render her abusive and delaying tactics any the less distressful to respondent, and should not shield her from sanctions. In this connection *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, speaks of the "subjective" standard which "looks to the motives of the appellant and his or her counsel. Thus, in *Simon* v. *Bemis Bros. Bag Co.* (1955) 131 Cal.App.2d 378, 382 . . . the court rejected a claim that an appeal was frivolous, noting that counsel presented his argument in a 'courteous and gracious manner' and seemed to believe 'fervently' that he might succeed on the merits. Similarly, the courts have frequently looked at the 'good faith' of the appellant and have penalized appellants where the only

purpose of the appeal was delay. [Citations.]" (P. 649.) I do not read *Flaherty* as suggesting that an attorney's courteous behavior or fervent subjective belief in a position so clearly or patently without merit insulates him from sanctions for pursuing a frivolous appeal. That is not what *Simon* held; nor is such a result suggested by language in *Flaherty*. In *Simon*, the court found the appeal was not frivolous, the proof introduced by appellant was substantial and persuasive and it was presented in a courteous and gracious manner. (131 Cal.App.2d at p. 382.)

In the instant case, unlike in *Simon*, the appeal is wholly without merit; whatever "good faith" or "fervent" belief appellant may have had, clearly was not in her appeal from the summary judgment for she made no effort to "succeed on the merits," but in the case of malpractice she believes she has against respondent; and she definitely did not present her arguments in a "courteous and gracious manner." Had an attorney, instead of appellant, filed the briefs herein there could be no basis for concluding that he or she reasonably expected to succeed on the merits of the appeal, and that such delay and abusive tactics did not reflect an improper motive and amount to an abuse of the right of access to the appellate judicial system.

In determining the appropriate relief, the underlying policy of section 907, Code of Civil Procedure should control. The object of imposing a penalty for a frivolous appeal has two components: to discourage further frivolous appeals, and to compensate for the loss which results therefrom. (*Young* v. *Rosenthal, supra,* 212 Cal.App.3d 96, 134.) Consistent with this policy is the principle that a litigant has a right to act as his or her own attorney, but in so doing is restricted to the same rules of procedure as are required of those qualified to practice law, otherwise ignorance is unjustly rewarded. (*Doran* v. *Dreyer* (1956) 143 Cal.App.2d 289, 290 [299 P.2d 661].)

Respondent is not the only party damaged when an appellant pursues a frivolous claim. "Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources." (*Finnie* v. *Town of Tiburon, supra,* 199 Cal.App.3d 1, 17; *Bank of America* v. *Varakin, supra,* 216 Cal.App.3d 1630, 1638-1639; *Young* v. *Rosenthal, supra,* 212 Cal.App.3d 96, 136.)

In recognition of the need to impose a penalty which will have the effect of discouraging delay and similar abusive tactics intended to harass the opposing party in the future, by not only this appellant but others, and in order to provide some additional compensation for the necessity of respond-

ing to a wholly frivolous appeal, I would impose a $3,000 sanction against appellant.

The foregoing constitutes a written statement of my reasons for believing such sanction is appropriate. (*In re Marriage of Flaherty, supra*, 31 Cal.3d 637, 654.)

Appellant's petition for review by the Supreme Court was denied March 20, 1991.